P. A. BERGNER & COMPANY OF ILLINOIS, Plaintiff-Appellee, v. LLOYDS JEWELERS, INC., *et al.*, Defendants-Appellants.—LLOYDS JEWELERS, INC., *et al.*, Plaintiffs-Appellants, v. P. A. BERGNER & COMPANY OF ILLINOIS *et al.*, Defendants-Appellees.

Third District   Nos. 3—84—0071, 3—84—0072 cons.

Opinion filed December 31, 1984.—Rehearing denied February 8, 1985.

Glenn J. Church, of Peoria, and Lex Hawkins and Glenn Norris, both of Hawkins & Norris, of Des Moines, Iowa, for appellants.

Charles G. Roth, of Kavanagh, Scully, Sudow, White & Frederick, ·of Peoria, for appellees P. A. Bergner & Company and Charles V. Weise Company.

Goldsworthy & Fifield, of Peoria, for appellee Seligman & Latz, Inc.

JUSTICE HEIPLE delivered the opinion of the court:

This action involves a department lease entered into between P. A. Bergner & Co., a retail department store chain in central Illinois, and Lloyds Jewelers, Inc., a retail jeweler located in Peoria. In 1967, Lloyds leased space within various Bergner stores and operated jewelry departments under the name of Bergner. The lease was to run until January 31, 1979, but was terminated by Bergner on July 31, 1977. Bergner brought an action for account stated to recover rent and fixture charges owed by Lloyds under the lease. J. Robert Congress, the sole shareholder of Lloyds, was also named as a defendant because he had personally guaranteed the indebtedness by signing two notes.

Lloyds filed a counterclaim against Bergner for breach of the lease contract. The remaining counterdefendants, Finlay-Strauss Division, Seligman & Latz, Inc., and the Charles V. Weise Co., were alleged by Lloyds to have been part of a conspiracy, along with Bergner, to tortiously interfere with Lloyds' contract rights and prospective business advantage.

In addition to the lease with Bergner executed in 1967, Lloyds also entered into a lease with the Charles V. Weise Co. in 1971 to operate jewelry departments in Weise stores. The lease was assigned to a corporation owned by Robert Congress and a business associate. The Weise lease was terminated by Weise as of October 1, 1977. The terms of the Weise lease were essentially the same as those of the Bergner lease and their factual background identical. Although Weise is a party to this suit, it is the performance of the Bergner lease which is primarily at issue.

Briefly stated, the facts are as follows. Under the 1967 Bergner lease, Lloyds paid fixed monthly rent plus a percentage of gross sales at year end. Bergner was to collect Lloyds' monthly receipts and make an accounting after deducting rent and fixture charges. In 1973, Lloyds discovered that Bergner had not been deducting the sums owed by Lloyds, resulting in a $46,000 arrearage. Lloyds informed Bergner, and the parties agreed that the debt would be paid in $4,000 monthly installments deducted from Lloyds' receipts by Bergner.

In 1975, a new lease was entered into which provided for monthly deductions of percentage rent in order to eliminate the possibility of huge debts piling up. Bergner continued to perform under the 1967 lease and failed to charge Lloyds for percentage rent and fixtures as provided in the 1975 lease until Lloyds caught the error in August

1976 and informed Bergner.

No action was taken by Bergner until January 1977, when it demanded full payment of the $258,084 arrearage by Lloyds. The sole shareholder of Lloyds, Robert Congress, signed a letter acknowledging the debt and gave two notes guaranteeing the indebtedness. The notes were not paid when due.

In July 1977, Bergner withheld all of Lloyds' gross receipts to apply against the debt. The practice was repeated in the months which followed, eventually forcing Lloyds out of business. Lloyds unsuccessfully attempted to negotiate a termination agreement. In October 1977, Lloyds vacated the Bergner stores.

Defendants Seligman & Latz, Inc., and Finlay-Strauss had been negotiating with Bergner in early 1977 to buy out the jewelry departments operated by Lloyds. Bergner and Finlay allegedly conspired to force Lloyds out of business by using the indebtedness as leverage.

In count I of the complaint, Bergner sought recovery for account stated. Counts II and III sought payment of the guarantee notes signed by Mr. Congress. The sum of the amounts alleged in counts II and III equaled $82,292.72, which was the amount alleged in count I. A jury verdict was returned for Bergner in the amount of $36,688.33 on all three counts. The trial court found that the verdicts could not be reconciled and ordered a new trial on damages. We reverse.

Lloyds argues that the record supports a reduction in the total amount sought by Bergner in count I from $82,292.72 to $36,688.33. The fact that the reduced award was repeated in counts II and III allegedly shows that the jury properly construed the notes to be for no more than amount owed under count I.

At trial, Lloyds established that the amount claimed by Bergner may have been inflated by as much as $68,000. Assuming the jury accepted all of Lloyds' evidence as true, it could have awarded as low a sum as $14,292.74. Apparently the jury accepted only part of Lloyds evidence and reduced the award to $36,688.33. The record supports such a reduction.

■■ At trial, the attorneys for Lloyds were able to show on cross-examination that Bergner's account ledgers did not adequately support the full amount claimed by Bergner. Other accounting discrepancies were uncovered which would also support a reduced award. The fact that the jury awarded the reduced amount in all three counts is an error in form rather than evidence of hopeless confusion. The jury clearly intended the award of $36,688.33 in count I to represent the total amount of indebtedness. Instead of apportioning this amount between counts II and III, the jury construed each note as guaranteeing

the amount in count I. We do not believe the jury intended that Bergner recover more than $36,688.33. Accordingly, the trial court erred in granting a new trial on damages.

Count I of Lloyds' counterclaim sought $670,000 for breach of contract. The jury returned a verdict for Lloyds for the full amount requested. The trial court granted Bergner's motion for a directed verdict. We reverse.

Lloyds argues that Bergner breached the lease by failing to deduct rent and fixture charges as required under the lease and then withholding all of Lloyds' receipts to pay the debt which Bergner allowed to accumulate.

Bergner defends the directed verdict arguing that there was no breach. According to Bergner, the accounting provisions were for its own benefit to ensure collection of the amounts due from Lloyds. Bergner argues that a party may, with impunity, waive those portions of a contract inserted solely for that party's benefit. *Lempera v. Karner* (1979), 79 Ill. App. 3d 221, 223.

■ The accounting provisions in the lease operated for the benefit of both parties. By failing to account as provided in the lease, Bergner deprived Lloyds of the right to meet its financial obligations in an orderly and relatively painless fashion via monthly deductions. It was clearly to Lloyds' benefit that Bergner perform as required and not permit the amounts owed to Lloyds to grow out of control. Such a provision could not be waived by Bergner, and its failure to perform was a material breach of contract.

After permitting a huge arrearage to build up as a result of its nonperformance, Bergner attempted to collect this amount by absorbing Lloyds' entire cash flow beginning in July 1977. It is true that Bergner had the right under paragraph six of the lease to deduct its proper charges and any sums due from Lloyds. However, Bergner was under an implied obligation to perform in good faith. Bergner's sandbagging tactics were not in good faith. Bergner ignored the contract in creating the debt and then decided to enforce the contract in collecting the debt. The trial court erred in finding, as a matter of law, that Bergner did not breach the lease agreement.

Bergner argues that Lloyds waived its right to sue for breach because it was aware that debt was accruing under the lease and yet continued to perform. The record reveals that in August 1976, Lloyds first became aware that deductions were not being made pursuant to the 1975 lease. Lloyds immediately informed Bergner. Clearly, Lloyds did not acquiesce in any continuing breach by Bergner.

Next, Bergner argues that Lloyds' action for breach of contract

can more accurately be described as an action for constructive eviction. Regardless of whether we concentrate on the form or substance of count I of the counterclaim, Lloyds' action is clearly one for breach of contract. The law of constructive eviction is irrelevant.

■ Along with the constructive-eviction argument, Bergner also contends that Lloyds is barred from suing for breach of contract because it is unable to plead and prove that Lloyds performed all conditions required of it. It is true that Lloyds has yet to pay all amounts due under the lease for rent and fixture charges. However, failure to perform a contract according to its terms is excused when the opposite party makes performance impossible. (*Barrows v. Maco, Inc.* (1981), 94 Ill. App. 3d 959.) Bergner's acts caused the amounts due under the lease to accumulate to the point where Lloyds was unable to pay the full amount on demand. Therefore, Bergner cannot use Lloyds' nonperformance as a defense.

In the event we reinstate the jury verdict in favor of Lloyds on count I of the counterclaim, Bergner argues that the cause must be remanded for a new trial because: (1) the court erred in submitting one of Lloyds' jury instructions and; (2) Lloyds failed to prove its damages.

■ Lloyds offered the following non-IPI jury instruction which the trial court submitted over Bergner's objection:

"You are instructed that whenever two parties enter a contract, there is an obligation which is implied in the law that both parties will perform their respective duties thereunder in good faith and will cooperate with the other in the performance thereof. You are told that the law further implies that each party to a contract will refrain from doing anything which will have the effect of injuring or destroying the right of the other party to receive the fruits or benefits of the contract."

Bergner does not argue that the instruction misstates the law. Bergner's objection is that the instruction violates Supreme Court Rule 239(a) (87 Ill. 2d R. 239(a)) and that the instruction covers matters within the province of the trial judge and not the jury.

Supreme Court Rule 239(a) requires that non-IPI instructions be simple, brief, impartial and free from argument. Lloyds' instruction states the relevant law as simply and briefly as is possible.

Bergner contends that the obvious purpose of the instruction was to have the jury conclude that Bergner had an obligation to retain Lloyds under the lease even though Lloyds was substantially in arrears. We find that the instruction is nonargumentative and impartial. It instructs the jury as to contractual obligations implied in law which

are equally binding on both parties.

Bergner argues that the principle of good faith and fair dealing is primarily a construction aid in determining the intent of the parties. (*Martin v. Federal Life Insurance Co.* (1982), 109 Ill. App. 3d 596.) Therefore, the instruction requires the jury to construe the contract, which is a function usually reserved for the court. The question of good faith is not being used here as a construction aid. Whether or not the contract was performed in good faith is directly related to the factual issue of whether there was a breach. We find that the instruction was properly submitted to the jury.

■ Bergner argues that the evidence does not support a $670,000 damage award for breach of contract. Lloyds' measure of damages is the difference between the profit which would have been realized had Lloyds operated the store through January 31, 1979, the date the lease was to terminate, and the profit actually realized by Lloyds for that same period. The lease was terminated in October 1977.

It is not necessary that Lloyds prove its lost profits with absolute certainty, but only that the prospective profits be approximated by competent proof. (*H. Vincent Allen & Associates, Inc. v. Weis* (1978), 63 Ill. App. 3d 285.) It has been held repeatedly that the assessment of damages is a question of fact for the jury. Where no issue is raised concerning the instructions on damages and there is no showing that the verdict was the result of passion, prejudice or a patent disregard of any element of damages, the jury verdict will be affirmed. *Maguire v. Waukegan Park District* (1972), 4 Ill. App. 3d 800.

■ Bergner argues that jury was not given sufficient information to assess damage and that some of the information was irrelevant and erroneous. Projection of future profits by Lloyds' expert witness was based on Lloyds' performance in prior years. This is the generally accepted method of calculating lost profit. (*Kollberg v. Cities Service Oil Co.* (1951), 343 Ill. App. 355.) The basis of Bergner's objection is not that improper procedures were used but that unreasonable assumptions were employed. We have examined the record and find that an adequate foundation was laid for each assumption made by Lloyds' expert in computing future lost profits. We believe that it was within the province of the jury to reject Bergner's attempt on cross-examination to undermine the credibility of Lloyds' witness and the accuracy of his figures.

The remaining issues concern counts II, III, IV and V of Lloyds' counterclaim alleging tortious interference with contract (I, II) and tortious interference with prospective business advantage (III, IV). As to counts II and III, jury verdicts were returned in favor of defendant

Finlay-Strauss. Count IV resulted in a directed verdict for Finlay-Strauss, a directed verdict for Bergner on some issues and a jury verdict for Bergner on the remaining issues. Finally, a directed verdict was entered for Bergner, Weise and Finlay-Strauss on count V.

■ Lloyds argues that the trial court erroneously instructed the jury that clear and convincing evidence is that quantum of proof which leaves no reasonable doubt in the mind of the trier of fact. The clear and convincing standard is applied in cases charging a civil conspiracy, as do the last four counts of Lloyds' counterclaim. Illinois courts have not yet settled on a single definition of clear and convincing evidence. For example, clear and convincing evidence has been variously defined as evidence which "leave[s] the mind well satisfied [of the truth of a proposition]" (*Hotze v. Schlanser* (1951), 410 Ill. 265, 269); evidence which "strikes all minds alike as being unquestionable" (*Lines v. Willey* (1912), 253 Ill. 440, 449); evidence which "lead[s] to but one conclusion" (*Johnson v. Johnson* (1953), 1 Ill. 2d 319, 324); "more than a preponderance while not quite approaching the degree of proof necessary to convict a person of a criminal offense" (*In re Estate of Ragen* (1979), 79 Ill. App. 3d 8, 14). There are also a number of cases which define clear and convincing evidence as proof which leaves no reasonable doubt in the mind of the trier of fact. (*Galapeaux v. Orviller* (1954), 4 Ill. 2d 442; *In re Drescher v. Drescher* (1980), 91 Ill. App. 3d 658; *In re Jones* (1975), 34 Ill. App. 3d 603.) Although stated in terms of reasonable doubt, clear and convincing evidence is considered to be more than a preponderance while not quite approaching the degree of proof necessary to convict a person of a criminal offense. (*In re Estate of Ragen* (1979), 79 Ill. App. 3d 8, 14.) Accordingly, it was not error to define clear and convincing evidence based upon reasonable doubt.

■ Next, Lloyds contends that the trial court erred by instructing the jury that malice and conspiracy are elements of Lloyds' cause of action for interference with contract.

Malice is defined as intent to do wrongful harm and injury without just cause. While malice has been presumed in some cases, it is nonetheless an essential element of a cause of action for tortious interference with contract. (*Clifton-Strode, No. 2, Inc. v. Kent* (1982), 110 Ill. App. 3d 525; *Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.* (1983), 120 Ill. App. 3d 254.) It was not error to so instruct the jury.

■ Counts II, III, IV and V of Lloyds' counterclaim each alleged that the named defendants acted as part of a conspiracy. Conspiracy is not an essential element of a cause of action for tortious interfer-

ence with contract or business advantage. However, when a plaintiff pleads a conspiracy, he must also prove a conspiracy. In fact, it was Lloyds who submitted an instruction defining conspiracy in relation to counts II and III of the counterclaim. Therefore, additional issues instructions on conspiracy were invited by Lloyds and were properly given.

■■■ Finally, Lloyds argues that the trial judge abused his discretion when he denied Lloyds' motion to amend its counterclaim to conform to the proofs and to add Bergner and Weise as defendants in counts I and II. Lloyds' motion to amend was made at the close of evidence. The trial court stated that Lloyds could amend to conform to the proofs but would not be allowed to realign the defendants.

Lloyds argues that the motion to amend could have properly been granted. That may be true, but it does not necessarily follow from this argument that the trial court's failure to grant the motion was an abuse of discretion.

The party alignment of counts II, III, IV and V of the counterclaim had remained unchanged for at least two years before trial. Lloyds realized by the end of trial that by failing to include Bergner and Weise in counts II and III, it would be unable to sustain its claim of a conspiracy. Lloyds had ample time to solve any problems in the alignment of defendants. The trial court did not abuse its discretion by refusing to allow such a rearrangement at the close of evidence.

To summarize, the judgment of the circuit court of Peoria County as to counts I, II and III of the complaint and count I of the counterclaim is reversed and the jury verdicts reinstated. We affirm the trial court's judgment on the remaining counts of Lloyds' counterclaim.

Affirmed in part; reversed in part.

BARRY and SCOTT, JJ., concur.