(No. 61581.—

P. A. BERGNER & COMPANY OF ILLINOIS, Appellant, v. LLOYDS JEWELERS, INC., *et al.*, Appellees.

*Opinion filed April 4, 1986.—Rehearing
denied June 2, 1986.*

Charles G. Roth, David J. Dubicki, Laurie M. Judd and Richard D. Rinner, of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria, for appellant.

Lex Hawkins, Glenn L. Norris, George F. Davison, Jr., and Carla T. Cook, of Hawkins & Norris, of Des Moines, Iowa, and Glenn J. Church, of Glenn J. Church, Ltd., of Peoria, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, P. A. Bergner & Company of Illinois, instituted this action against defendants, Lloyds Jewelers, Inc. (Lloyds), and J. Robert Congress (Congress), in the circuit court of Peoria County. Defendants counterclaimed against plaintiff and two affiliated corporations which, after leave given, they joined as counterdefendants, alleging that they conspired with plaintiff to wrongfully terminate a lease held by defendant Lloyds. The jury returned a verdict in favor of plaintiff and against both defendants in the amount of $36,688.33 on each of three counts in plaintiff's complaint. The jury returned a verdict in favor of Lloyds in the amount of $670,000 on count I of its counterclaim against plaintiff,

and verdicts in favor of the two counterdefendants. Following a hearing on the post-trial motions, the circuit court directed a verdict in favor of plaintiff on count I of the counterclaim and allowed a new trial on plaintiff's action on the issue of damages only. Defendants appealed; the appellate court reversed the judgment entered on count I of the counterclaim, reinstated the verdict, and reversed the order granting a new trial. (130 Ill. App. 3d 987.) We allowed plaintiff's petition for leave to appeal (94 Ill. 2d R. 315).

The record shows that plaintiff operated a chain of retail department stores and that Lloyds was in the retail jewelry business. In 1967, plaintiff and Lloyds entered into a "Departmental Lease" under the terms of which Lloyds would operate the jewelry department located in plaintiff's Peoria store. The agreement provided for a minimum guaranteed rental and for additional rental based on Lloyds' net sales in excess of $100,000 per lease year. The agreement provided that all cash receipts would be delivered to plaintiff's cashier not later than the close of business of each day and for charge accounts and installment payments to be processed through plaintiff's credit department. The agreement also provided:

"6. Lessor [plaintiff Bergner] shall receive and hold in trust until an accounting is made in respect thereto, all sums collected, including cash sales and approved credit sales of merchandise or services rendered by the Lessee [defendant Lloyds], but shall not be obligated to segregate said funds or keep them in a separate account. Accounting and settlement shall be made by Lessor with Lessee for each calendar month's business on or before the last day of the next succeeding month. Each month as the Lessor makes an accounting to the Lessee of the business of the Lessee for the preceding calendar month, it shall, after deducting its proper charges and any and all sums due from Lessee to Lessor, pay over to the Les-

see the balance due to it through and including the last day of the preceding calendar month."

On January 21, 1975, the parties executed a "Master Department Lease" which applied to lease departments operated by Lloyds in eight of plaintiff's stores. This agreement contains the foregoing provision.

For reasons not explained in the record, plaintiff, in accounting to Lloyds, did not consistently deduct fixture costs which the agreements provided Lloyds was to pay, and failed to deduct the excess rentals. Lloyds' financial statements for the fiscal year 1972 through 1976 (June 1 through May 31) showed liabilities for accrued rent, and the financial statement for 1976 showed a fixture liability to plaintiff in the amount of $125,361.

In late January 1977, Congress, who was president and sole shareholder of Lloyds, met with an officer of plaintiff to discuss payment of the amounts due from Lloyds to plaintiff. At that meeting the parties signed a letter agreement which agreed that Lloyds was indebted to plaintiff in the amount of $125,361.43 for fixtures, and $161,220.39 for excess rentals. It was agreed that the fixture indebtedness would be paid on or before February 28, 1977, through a loan Congress was negotiating with his bank. Payments of $10,000 per month on the excess rental indebtedness were to be deducted by plaintiff from Lloyds' statement, and on April 30, 1977, the matter was to be reviewed for the purpose of accelerating the principal payments. Congress executed two promissory notes payable to plaintiff, one in the amount of each indebtedness.

On July 31, 1977, because the fixture and rent charges remained unpaid, plaintiff withheld the entire sum due Lloyds under the monthly settlement statement. Lloyds was given written notice of the withholding and advised as to the balance remaining on each indebtedness, and was further notified that failure to pay

the entire amount due within 30 days would result in the lease being terminated. Except for some money released by plaintiff to Lloyds in August for the purpose of making payments to some other creditors, plaintiff withheld Lloyds' sales proceeds for July and August 1977, and applied them to the amounts due. On October 14, 1977, Lloyds vacated all of the leased locations, and its attorney advised plaintiff that Lloyds considered the lease agreement "at an end, effective immediately."

Plaintiff's complaint contained three counts; count I, based on the letter agreement as an account stated, asked judgment against defendant Lloyds in the amount of $82,292.72; counts II and III sought judgments against Congress in the amount of the balances remaining due on the notes, $37,683.02 on the fixture note, and $44,608.70 on the rent note.

In Lloyds' counterclaim, as amended, count I alleged that plaintiff had breached the contract between the parties and sought damages for that breach. Counts II, III, IV and V were directed against plaintiff, the two counterdefendants named in the counterclaim, and a corporate subsidiary of one of them. It alleged tortious interference with Lloyds' contract with plaintiff resulting in one of the counterdefendants taking over the locations which defendant had under lease.

The circuit court, in setting aside the verdicts in favor of plaintiff, stated that it could not be determined from the verdicts what the jury intended to award plaintiff, and the finding of the same amount on each of the three counts could not be reconciled. Concerning the verdict on the counterclaim, finding that as a matter of law plaintiff had not breached the contract, the court allowed plaintiff's motion for directed verdict on which it had earlier reserved ruling.

In reversing the judgment, the appellate court found that the verdict in favor of plaintiff did not indicate con-

fusion on the part of the jury, that it resulted from the jury's finding that the sums due plaintiff had been reduced below the amount claimed by plaintiff, and that the verdict was supported by the evidence; the court held that the provision of the agreement for the deduction of rent and fixture charges could not be waived by plaintiff without notice to or acquiescence of Lloyds. The court held further that plaintiff, in permitting substantial arrearages to accrue and then later attempting to collect the whole amount by withholding Lloyds' entire "cash flow" violated its implied "good faith obligation." It held further that Lloyds' failure to perform the conditions of the agreement would not preclude its action against plaintiff arising from plaintiff's material breach of the agreement in failing to deduct the amounts due for rent and fixture charges.

We consider first the contentions with respect to the granting of a new trial on the question of damages only in plaintiff's action against Lloyds and Congress. The letter agreement entered into by the parties in January 1977 was clearly an account stated as to the sums owed as of that time. The parties expressed agreement concerning the items of which the indebtedness was comprised, and there is nothing contained in the record which serves to show that the figures are erroneous. The credit given Lloyds for the fixtures retained by plaintiff when Lloyds vacated the premises appears to have been in the amount to which their cost was depreciated, so there exists the possibility that the value was different, thus altering the amount remaining due on that item. The consideration for the two notes executed by Congress was Bergner's forebearance in enforcing collection of the sums due at that time, and in his capacity as sole shareholder and president, he executed the notes to guarantee payment. The verdicts, therefore, to be consistent, would require that the total of the sums found

by the jury to be due on counts II and III would equal the sum found to be due and owing from Lloyds on count I. We agree with the circuit court that because of the manner in which the verdicts were returned it cannot be determined whether the jury intended to award plaintiff $36,688.33, or twice or three times that amount.

The amount due having been settled by the agreement entered into in January 1977, the burden of proving that it was erroneous was on Lloyds and Congress. (*State v. Illinois Central R.R. Co.* (1910), 246 Ill. 188.) Although the testimony might possibly support a finding of less than the amounts claimed by plaintiff, it cannot support a reconciliation of the verdicts returned. We hold, therefore, that the circuit court did not abuse its discretion in granting plaintiff a new trial limited to the issue of damages only, and that the appellate court erred in reversing the judgment of the circuit court.

We consider next plaintiff's contention that the appellate court erred in reinstating the verdict returned by the jury on its counterclaim. Plaintiff contends that the departmental lease and master department lease agreements expressly gave plaintiff the right to withhold payment in the manner in which it was done. Defendants contend plaintiff's conduct constituted a breach of the contract and that by permitting the indebtedness to accumulate to the point where defendants could not pay it, plaintiff breached the implied obligation of good faith found in every contract.

When the language of a contract is unambiguous, the express provision governs and there is no need for construction or inquiry as to the intention of the parties. (*Lenzi v. Morkin* (1984), 103 Ill. 2d 290.) In our opinion the provision of the lease is unambiguous and clearly defines the obligations of the parties. Assuming, *arguendo*, that the question of plaintiff's good faith was appropriately made an issue in this case, the only alleged detri-

ment to Lloyds resulting from plaintiff's failure to withhold from the monthly settlements the full amount due was that the indebtedness grew too large to pay at one time, and a reasonable time was needed to pay it. This argument overlooks the fact that Lloyds retained the money and could have put it aside for later payment. Furthermore, the letter agreement fixed a reasonable time for payment with which Lloyds did not comply. It is undisputed that subsequent withholdings occurred only after defendants failed to make the agreed payments and after demand was made for the entire indebtedness to be paid within 30 days.

We hold that the circuit court correctly held that as a matter of law plaintiff had not breached the agreement between the parties and that in reversing the judgment entered by the circuit court on the counterclaim, the appellate court erred.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed. The cause is remanded to the circuit court of Peoria County for further proceedings consistent with this opinion.

*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded.*