**NAVISTAR INTERNATIONAL CORPO-RATION (formerly International Harvester Company), Plaintiff,**

v.

**HAGIE MANUFACTURING COMPANY, Defendant.**

**No. 80 C 6373.**

United States District Court, N.D. Illinois, E.D.

May 29, 1987.

Evan A. Burkholder, Lord, Bissell & Brook, Chicago, Ill., for plaintiff.

John M. Carroll, Hope G. Nightingale, Mayer, Brown & Platt, Chicago, Ill., for defendant.

MEMORANDUM OPINION
AND ORDER

ROVNER, District Judge.

## I. INTRODUCTION

This action arises out of an agreement between the defendant, Hagie Manufacturing Company ("Hagie"), and the plaintiff, International Harvester Company ("Harvester"), under which Hagie agreed to sell fifty high clearance crop sprayers to Harvester for eventual resale by Harvester dealers. After experiencing difficulties with the sprayers, Harvester brought this action against Hagie. Only two counts remain of Harvester's amended complaint and they are: count I—for breach of the October 31, 1975, written sales contract;

and count III—for fraudulent misrepresentation.[1]

Pending before the Court are two motions for summary judgment brought by Hagie. In its first motion, Hagie asserts that Harvester waited until after the statute of limitations ran on Harvester's breach of warranty claims before filing its original complaint. Hagie's second motion challenges Harvester's claim for profits which Harvester anticipated would result from a continuing business relationship between Hagie and Harvester.

The legal standards the Court must apply to a motion for summary judgment are clear.

> 'The party moving for summary judgment has the burden of establishing the lack of a genuine issue of material fact.' [citation omitted] Thus, 'in determining whether factual issues exist, a reviewing court must view all the evidence in the light most favorable to the non-moving party.' [citations omitted] 'Where the moving party fails to meet its strict burden of proof, summary judgment cannot be entered ...' [citation omitted] ... '[T]he responsibility of the district judge on a motion for summary judgment is merely to determine whether there are issues to be tried, rather than to try the issues himself via affidavits.' [citations omitted]

*McGraw-Edison Company v. Walt Disney Productions*, 787 F.2d 1163, 1167 (7th Cir. 1986). As explained more fully below, after applying the Rule 56 standards to Hagie's motions, the Court concludes that Hagie is entitled to summary judgment on both of the grounds it has asserted.[2]

## II. STATUTE OF LIMITATIONS

Hagie contends, and Harvester does not dispute, that count I of the amended complaint states claims for breaches of a variety of warranty provisions attendant to the October 31, 1975, contract between Hagie and Harvester. Harvester seeks to recover, under both express and implied warranty theories, the damages it suffered when Hagie allegedly failed to abide by the warranties covering the fifty sprayers sold to Harvester.

Despite Harvester's general claim to the contrary, there is basically no dispute as to the facts that are material to the statute of limitations issue. As required by this District's Local General Rule 12(e), Hagie filed a "statement of material facts" in support of its motion for summary judgment. Hagie asserts that the material facts that entitle it to judgment as a matter of law are:

1. Hagie Manufacturing Company entered into two separate contracts for the sale of high clearance crop sprayers to International Harvester Company, dated April 1, 1975 and October 31, 1975.

2. Under the April 1, 1975 contract, Hagie sold 20 sprayers to International Harvester. The sprayers were manufactured pursuant to International Harvester specifications and all 20 were delivered pursuant to International Harvester shipping instructions by July, 1975.[3]

3. Under the October 31, 1975 contract, Hagie sold 50 sprayers to International Harvester. The sprayers were manufactured pursuant to International Harvester specifications and tendered for delivery to International Harvester by mid-February, 1976. International Harvester gave shipping instructions to Hagie for these 50 machines starting in February, 1976.

4. On or about September 22, 1976, International Harvester requested formal discontinuance of its program to purchase the Hagie sprayers for resale, in part because of service problems experienced with the sprayers.

---

1. On May 15, 1987, the Court granted judgment on the pleadings to Hagie on count II—intentional breach of contract, and on count IV—negligent misrepresentation.

2. In light of this ruling by the Court and the earlier May 15, 1987, judgment on the plead-

ings, all that remains for trial is a portion of the damages claimed by Harvester under its fraudulent misrepresentation theory.

3. The April 1, 1975, contract is not at issue in this case.

5. International Harvester filed its lawsuit alleging, *inter alia,* breach of warranty on or about October 27, 1980.

(Hagie's Statement of Uncontested Material Facts, filed July 1, 1986) (citations omitted). Hagie's "statement" correctly references the portions of the record that support Hagie's summarization of the material facts.

Local General Rule 12(f) requires Harvester to file a "statement of genuine issues," with appropriate references to the record, in response to Hagie's statement of material facts. Harvester's "statement" must set forth the material facts as to which Harvester contends there are genuine disputes that must be litigated. Local Rule 12(f) specifically provides that "[a]ll material facts set forth in the statement required to be served by the moving party [Hagie] will be deemed to be admitted unless controverted by the statement required to be served by the opposing party [Harvester]." And indeed, Harvester has filed a twenty-one page document which it has labeled "International Harvester's Statement of Genuine Issues." However, Harvester's "statement" does not comply with Rule 12(f)'s requirements in that it neither responds to Hagie's "statement", nor sets forth additional disputed material facts. Harvester's "statement" is little more than a summary of the evidence Harvester intends to present at trial. Because Harvester has not controverted Hagie's statement of material facts, those facts are deemed admitted.

The Court is not simply utilizing a technical rule to deprive Harvester of its procedural rights. Instead, assuming that Harvester's counsel may not have known how to prepare a proper statement of genuine issues, the Court carefully reviewed Harvester's twenty-one page summary of evidence, as well as the fifty-one appended exhibits, searching for evidence that would suggest that there is a genuine dispute as to one or more of the material facts put forth by Hagie. Unfortunately for Harvester, the Court's search was in vain. The Court concludes that Harvester did not controvert the material facts contained in Hagie's "statement," because Harvester could not do so in good faith.

In summary, the Court concludes there is no genuine issue as to the following facts: 1) Hagie and Harvester entered into an agreement on October 31, 1975, under which Hagie was to sell fifty high clearance crop sprayers to Harvester; 2) the sprayers were manufactured pursuant to Harvester specifications and tendered for delivery by mid-February, 1976; 3) Harvester began giving shipping instructions to Hagie for the fifty sprayers beginning in February, 1976; and 4) Harvester filed this lawsuit on October 27, 1980.

The legal basis for Hagie's motion is straightforward. Hagie contends that the October 31, 1976, agreement was a contract for the sale of goods covered by Article II of the Illinois Uniform Commercial Code, Ill.Rev.Stat., ch. 26, § 2–101 *et seq.* Pursuant to § 2–725, Hagie argues, Harvester's action for breach of warranty had to be brought within four years from the date that Hagie tendered delivery of the sprayers to Harvester, or, as applied to the facts of this case, by mid-February, 1980. Finally, Hagie argues that by waiting until October 27, 1980, to file its complaint, Harvester missed the statute of limitations on count I by at least eight months.

Harvester makes three, and only three, arguments in response to Hagie's legal arguments. First, Harvester accepts the fact that a cause of action for breach of warranty accrues when tender of delivery is made, but argues that because Hagie never tendered "conforming" goods, Harvester's cause of action could not have accrued until October 31, 1976, when the Hagie-Harvester contract expired. Second, Harvester claims that Hagie is estopped to assert the four year statute of limitations because Hagie and Harvester engaged in settlement negotiations before the limitations period expired. And third, Harvester claims that the four year statute of limitations contained in § 2–725 was supplanted by the five year statute of limitations contained in Ill.Rev.Stat. ch. 110, § 13–215, because Hagie fraudulently concealed the existence of the cause of action from Harvester. The

Court will address Harvester's arguments seriatim.

### A. HAGIE'S TENDER OF NONCONFORMING GOODS

■ Section 2–725 of the Uniform Commercial Code provides in relevant part:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made ...*

Ill.Rev.Stat. ch. 26, § 2–725 (emphasis added). Harvester does not dispute the fact that the quoted portion of § 2–725 applies to this action. Rather, Harvester argues that § 2–725 must be read in conjunction with § 2–503(1) which defines "tender of delivery" and § 2–106(2) which defines "conforming" goods.

Section 2–503(1) defines the concept of tender of delivery as requiring "that the seller put and hold *conforming* goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery." Ill.Rev.Stat. ch. 26, § 2–503(1) (emphasis added). And, § 2–106(2) provides that goods are " 'conforming' or conform to the contract when they are in accordance with the obligations under the contract." Ill.Rev.Stat. ch. 26, § 2–106(2). Harvester combines all three U.C.C. sections and argues that a breach of warranty accrues when goods that are in accordance with the obligations under the contract are put and held by the seller for the buyer's disposition. Given this construction of § 2–725(2), Harvester argues, its breach of contract claim could not have accrued in mid-February 1976, because the sprayers did not "conform" to the terms of the contract. Harvester chooses the expiration date of the contract, October 31, 1976, as the accrual date on the theory that

October 31, 1976, was the last day for Hagie to cure the nonconformity. Not a single case is cited by Harvester in support of its construction of § 2–725(2).

Harvester also ignores the enlightening Official Comment Number 1 to § 2–503 which provides:

The major general rules governing the manner of proper or due tender of delivery are gathered in this section. The term "tender" is used in this Article in two different senses. In one sense it refers to "due tender" which contemplates an offer coupled with a present ability to fulfill all the conditions resting on the tendering party and must be followed by actual performance if the other party shows himself ready to proceed. Unless the context unmistakably indicates otherwise this is the meaning of "tender" in this Article and the occasional addition of the word "due" is only for clarity and emphasis. *At other times it is used to refer to an offer of goods or documents under, a contract as if in fulfillment of its conditions even though there is a defect when measured against the contract obligation.* Used in either sense, however, "tender" connotes such performance by the tendering party as puts the other party in default if he fails to proceed in some manner.

(Emphasis added). It is clear that the context of the statute of limitations contained in § 2–725 unmistakably indicates that the second explanation of the concept of tender of delivery set forth in Comment Number 1 applies in the instant case. Otherwise, a cause of action for breach of warranty would never "accrue" and could be brought at any time. Such a construction of a statute of limitations would be inherently self-contradictory. *See generally, Ontario Hydro v. Zallea Systems, Inc.,* 569 F.Supp. 1261 (D.Del.1983).

Given the undisputed material facts that are relevant to the statute of limitations question, the Court holds that Harvester's cause of action for breach of contract accrued in mid-February, 1976. Because Harvester filed this action four years and eight months later, unless Harvester has a

valid excuse for its tardy filing, count I is barred by the four year statute of limitations contained in Ill.Rev.Stat. ch. 26, § 2–725.

## B. HARVESTER'S EQUITABLE ESTOPPEL THEORY

■ Perhaps recognizing that it has statute of limitations problems, Harvester alternatively argues in response to Hagie's motion for summary judgment that Hagie is equitably estopped from asserting the statute of limitations as a defense. Harvester bases its estoppel argument on the fact that settlement negotiations between Hagie and Harvester took place during the twenty months that preceded the filing of this lawsuit. In reply, Hagie argues that the mere pendency of settlement negotiations does not operate to place an estoppel on its right to assert the statute of limitations as a defense to count I.

Under Illinois law, a defendant may be estopped by his conduct from asserting the statute of limitations as a defense. *See, e.g., Arthur L. Larsen Company, Inc. v. Shefner,* 27 Ill.App.3d 562, 327 N.E.2d 257, 258 (2nd Dist.1975); *Sabath v. Morris Handler Company,* 102 Ill.App.2d 218, 243 N.E.2d 723, 726 (1st Dist.1968). The estoppel issue usually arises in situations where the parties, or their insurers, engage in negotiations regarding a claim prior to the expiration of the statute of limitations. However, the fact that a defendant took part in such discussions does not automatically estop him from asserting a statute of limitations defense. It is well settled in Illinois law that—

[t]he mere pendency of negotiations conducted in good faith and with a view of compromise, during the period of the statute of limitations ... is not sufficient to show a waiver of the statute and does not estop the defendant from asserting the defense.

*Myers v. Centralia Cartage Company,* 94 Ill.App.3d 1139, 50 Ill.Dec. 357, 360, 419 N.E.2d 465, 468 (1st Dist.1981); *see also, Arthur L. Larsen Company, Inc. v. Shefner,* 27 Ill.App.3d 562, 327 N.E.2d 257, 258 (2nd Dist.1975); *Loughran v. A & M Moving and Storage Company;* 17 Ill.App.3d 119, 307 N.E.2d 794, 798 (1st Dist.1974); and *Chapman v. Huttenlocher,* 125 Ill. App.2d 39, 259 N.E.2d 836, 839 (2nd Dist. 1970). Unless there is evidence of improper conduct on the part of the party asserting the statute of limitations defense, "the court may dispose of the defense itself and dismiss the complaint as time-barred." *Hurtt v. Davidson,* 84 Ill.App.3d 681, 40 Ill.Dec. 389, 391, 406 N.E.2d 90, 92 (1st Dist.1980).

To support its estoppel theory, Harvester has brought forth only one piece of evidence—the affidavit of Kevin E. Condron, an in-house attorney with Harvester. The complete text of Mr. Condron's affidavit is set out in the margin.[4] Mr. Condron's affidavit establishes only that 1) both Hagie and Harvester hoped to resolve their dispute without the necessity for a lawsuit, and 2) Harvester relied on Hagie's continuing participation in the settlement negotiations as its reason for not filing suit prior

---

4. STATE OF ILLINOIS )
                    ) SS
  COUNTY OF COOK )

KEVIN E. CONDRON, being first duly sworn on oath, deposes and states:

1. That I am an attorney and an employee of Navistar International Corporation (formerly International Harvester Company). This affidavit is based upon my personal knowledge of the facts, and upon my personal review of pertinent corporate records.

2. That beginning on or about 1 March 1979, I met with Larry Ivers, an attorney for Hagie Manufacturing Company, in order to discuss a settlement of the matters which are the subject of this lawsuit (No. 80 C 6373). I also had subsequent settlement discussions with Mr. Ivers.

3. That at my direction and under my supervision, IH representatives and Hagie representatives engaged in protracted settlement negotiations.

4. That during the settlement negotiations described in paragraphs 2 and 3, both sides expressed their desire to resolve this dispute without resorting to litigation.

5. That the settlement negotiations broke down shortly before this suit was filed on 27 October 1980.

6. That IH did not file suit before 27 October 1980 due to its reliance on Hagie's continuing participation in settlement negotiations.

FURTHER AFFIANT SAYETH NOT.

                    Kevin E. Condron /s/

---

                    Kevin E. Condron

to October 27, 1980.[5] Viewing the facts established by Mr. Condron's affidavit, and the legitimate inferences that can be drawn from those facts, in the light most favorable to Harvester, the Court holds that as a matter of law Harvester cannot prevail on its estoppel theory. Harvester has not presented any evidence to suggest that a genuine issue of material fact exists with respect to any improper conduct *on the part of Hagie.* There is nothing improper about Hagie's desire to avoid litigation. And, Harvester clearly cannot rely in support of its argument on the mere existence of settlement negotiations between the parties. Under Illinois law, even if everything Harvester says is true, these facts cannot establish an estoppel against Hagie's assertion of the statute of limitations defense.[6] Harvester has the burden of presenting facts to support its estoppel argument, *Bomba v. W.L. Belvidere, Inc.,* 579 F.2d 1067, 1070–1071 (7th Cir.1978), and it has clearly failed to do so.

### C. HARVESTER'S FRAUDULENT CONCEALMENT THEORY

■ Harvester's third and final argument in response to Hagie's motion for summary judgment is based upon Harvester's claim that Hagie fraudulently concealed many of the defects in the sprayers. Harvester argues that the four year statute of limitations contained in Ill.Rev.Stat. ch. 26, § 2–725 was supplanted by the five year statute of limitations contained in Ill. Rev.Stat. ch. 110, § 23–215, when Hagie fraudulently concealed the sprayer defects. Therefore, Harvester contends that it filed its complaint well within the applicable *five year* limitation period. For the purpose of analyzing Harvester's contentions, the Court will assume strictly *arguendo* that § 13–215 applies to this action.

Section 13–215 provides:

If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards.

Ill.Rev.Stat. ch. 110, § 13–215. Certainly, on its face, § 13–215 seems to support Harvester's arguments. But again, Harvester cites not a single case in support of its fraudulent concealment theory. The reason Harvester cites no cases is that the Illinois courts have construed § 13–215 in a manner that defeats Harvester's argument.

Illinois caselaw makes it clear that § 13–215 can operate to toll the limitations period only if after the plaintiff discovers the existence of the cause of action, a reasonable time does *not* remain under the original statute of limitations. *Anderson v. Wagner,* 79 Ill.2d 295, 37 Ill.Dec. 558, 569, 402 N.E.2d 560, 571 (1979) *appeal dismissed sub nom., Woodward v. Burnham City Hospital,* 449 U.S. 807, 101 S.Ct. 54, 66 L.Ed.2d 11 (1980). Applied to the instant case, if Harvester still had a reasonable time to file suit under the four year statute of limitations after it learned of the existence of its cause of action, § 13–215 simply does not operate to toll the four year limitations period.

To defeat Hagie's summary judgment motion on a theory of fraudulent concealment, it is incumbent upon Harvester to present evidence demonstrating that there exists a genuine issue of material fact as to whether Harvester had a reasonable amount of time remaining to file this case once Harvester learned that a cause of

---

5. Mr. Condron's affidavit is devoid of the details concerning statements made, or positions taken, by Hagie, that the Court would expect to find if Harvester is serious in presenting its estoppel argument.

6. Although in ruling on Hagie's motion, the Court has given Harvester every benefit of the doubt to which it is entitled under Fed.R.Civ.P. 56, the Court does find it curious that Harvester

filed suit four days before the statute of limitations would have expired under Harvester's construction of Ill.Rev.Stat. ch. 26, § 2–725. The Court is not surprised that Harvester could not create a genuine issue with respect to Hagie's conduct during settlement negotiations, because it appears that Harvester was fully conscious of the expiration of the limitations period. Harvester's mistake was in picking the wrong date.

action existed. *Cf., Colan v. Cutler-Hammer, Inc.,* 812 F.2d 357, 361 (7th Cir.1987); *Hossman v. Spradlin,* 812 F.2d 1019, 1020 (7th Cir.1987). Because Harvester bases its arguments on a literal and thus incorrect reading of § 13–215, it does not present direct, affirmative evidence regarding when it discovered it had a cause of action against Hagie. Harvester does admit that it might have discovered that its cause of action existed as early as June 14, 1976. (Harvester Brief dated August 29, 1986, at 4–5). More importantly, however, the affidavit of Kevin Condron establishes that at least by March 1, 1979, the Harvester legal department was aware that Harvester had a cause of action against Hagie arising out of the sale of the sprayers. Harvester would not have had its in-house counsel engage in "protracted settlement negotiations" with an attorney for Hagie, unless Harvester believed a cause of action against Hagie existed.

The evidence presented by Harvester itself establishes that Harvester knew by March 1, 1979, at the latest, that it had a cause of action against Hagie. At that point in time, eleven and one half months remained in the four year limitations period. The Court holds that eleven and one half months was a reasonable time for Harvester to file this action. Therefore, § 13–215 does not operate to toll the four year limitations period contained in Ill.Rev.Stat. ch. 26, § 2–725.

## D. CONCLUSION

Harvester raises three arguments in response to Hagie's motion for summary judgment on Harvester's breach of warranty count. As explained above, none of Harvester's three arguments has any merit. Therefore, the Court holds that there are no issues of material fact concerning the applicability of the Illinois four year statute of limitations to count I of the amended complaint, and that Hagie is entitled to judgment on count I as a matter of law.

## III. LOST PROFITS

With its second motion for summary judgment, Hagie challenges Harvester's claim for profits from future sales of sprayers. The record reveals that the following dispositive facts are undisputed: 1) Harvester purchased a total of seventy sprayers from Hagie under two separate contracts; 2) the second contract, for the purchase of fifty sprayers, was dated October 31, 1975, and expired on October 31, 1976; 3) on May 17, 1976, Harvester sent a letter to Hagie confirming Harvester's decision not to renew the sprayer sales contract for another season; 4) after the expiration of the October 31, 1975, contract, Harvester and Hagie did not renew the sales contract; 5) Hagie never had a contractual agreement to sell additional sprayers to Harvester beyond the seventy that were the subject of the two sales contracts; and 6) Harvester's reasons for discontinuing the sale of the Hagie supplied sprayers included Harvester's inability to penetrate the sprayer market, the unfavorable economic atmosphere surrounding cotton producers, and various service problems encountered with the Hagie built sprayers.[7]

Harvester's sole remaining count states a claim for Hagie's alleged fraudulent misrepresentations in regard to the October 31, 1975, contract for the sale of fifty sprayers. In response to Hagie's motion, Harvester asserts that it is entitled under Illinois law to recover the profits it would have realized from the resale of crop sprayers that would have been purchased from Hagie had the contractual relationship between Harvester and Hagie continued past October 31, 1976. In short, Harvester claims lost profits from the anticipated resale of sprayers that Hagie was under no obligation to provide. Harvester cites two Illinois cases in support of its lost profits claim—*Vendo Company v. Stoner,* 58 Ill.2d 289, 321 N.E.2d 1 (1974) *cert. den., Stoner v. Vendo Company,* 420 U.S. 975,

---

7. These undisputed facts are drawn from Hagie's "Statement of Uncontested Material Facts" filed in support of its lost profits motion as required by this District's Local General Rule 12(e). As with Hagie's other motion for summary judgment, nothing presented by Harvester controverts these facts.

95 S.Ct. 1398, 43 L.Ed.2d 655 (1975) and *P.A. Bergner & Company of Ill. v. Lloyds Jewelers*, 130 Ill.App.3d 987, 86 Ill.Dec. 59, 474 N.E.2d 1256 (3rd Dist.1984) *reversed*, 112 Ill.2d 196, 97 Ill.Dec. 415, 492 N.E.2d 1288 (1986). Neither case lends credence to Harvester's lost profits theory. *Vendo* involved a suit against a former director of the plaintiff for breach of his fiduciary duties and for breach of covenants not to compete. The Illinois Supreme Court's discussion of the proof needed to sustain a claim for lost profits does not in any way support Harvester's post-contract claim. The appellate decision in *Bergner*, later reversed by the Illinois Supreme Court, actually hurts Harvester because the court clearly limited the plaintiff's claim for lost profits to the period of the contractual relationship between the parties. Harvester has failed to provide *any* legal authority to support its post-contract lost profits claim.

Hagie, on the other hand, has presented authority from other jurisdictions that rejects similar lost profits arguments. In *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales*, 729 F.2d 1530 (5th Cir.1984), the court held that the plaintiff was not entitled to recover lost profits for sales that might have been made during a six month period during which the parties had agreed to suspend their contract obligations. After describing the issue before it as one of first impression, the Fifth Circuit stated:

> We hold that Nissho was not entitled to any profits that would have been earned during the period of suspension. The agreement between Occidental and Nissho clearly released Occidental from any obligation to supply oil to Nissho between October, 1976 and March, 1977. The suspension of the contract also benefitted Nissho, since its lifting requirements were held in abeyance. The clear and predictable consequence, however, of Nissho's agreement to the suspension was that the company would have no oil to sell to Kansai or any other buyer. *It is inconsistent for Nissho now to seek profits that it might have made on sales it essentially agreed to forego.* The parties put the entire contract in suspension during those six months;

likewise any right to profits during the period was suspended.

*Id.* (emphasis added). It is equally inconsistent for Harvester to seek profits that it might have made had it not decided to cease purchasing sprayers from Hagie.

The Ninth Circuit has also rejected a claim for post-contract profits, noting, "[p]rofits 'lost' from a completely voluntary and independent business decision [to terminate a computer distributorship] are not 'caused' in a legally cognizable sense by conduct that merely supplies some contributing factors underlying the decision." *Consolidated Data Terminals v. Applied Digital Data Systems*, 708 F.2d 385, 394 (9th Cir.1983). Similarly, Harvester's decision not to buy additional sprayers was the "cause" of its lost profits, even if its decision was motivated in part by problems it encountered with the sprayers it had purchased previously.

As noted above, Harvester has not presented any competent legal authority to support its claim for post-contract lost profits. And, in fact, courts which have considered the issue have rejected damage theories similar to Harvester's. For these reasons the Court holds that Illinois law does not permit a buyer to recover lost profits from the anticipated resale of goods that the supplier was under no contractual obligation to supply. Therefore, there being no genuine issue of material fact relevant to this issue, Hagie's motion for summary judgment is granted.

Hagie's motion was not addressed to Harvester's claim for lost profits attendant to the fifty sprayers sold under the October 31, 1975, contract. However, because this issue will no doubt be raised at trial, a brief discussion is in order. The Court finds that there is a fundamental inconsistency in a claim for lost profits arising out of the tort of fraudulent misrepresentation. Harvester essentially claims that it would never have entered into the contract with Hagie had Hagie been truthful in its dealings with Harvester. Yet, Harvester also wants to recover the benefit of its bargain with Hagie. It is unclear how Harvester can eschew the bargain and at the same time

benefit from it. *See generally, Madigan, Incorporated v. Goodman,* 498 F.2d 233, 239–240 (7th Cir.1974). The parties are ordered to file briefs on this issue in advance of trial.

### IV. CONCLUSION

Hagie's motions for summary judgment on count I of the amended complaint, and on Harvester's claim for post-contract lost profits are granted.