**CONQUEST DRILLING FLUIDS, INC., Appellant,**

v.

**TRI–FLO INTERNATIONAL, INC., Appellee.**

No. 09–02–194 CV.

Court of Appeals of Texas, Beaumont.

Submitted March 11, 2004.

Decided May 6, 2004.

---

Kenna M. Seiler, Hope & Causey, PC, Conroe, for appellant.

George D. Gordon, Baggett, Gordon & Deison, Conroe, Robert L. Gordon, Houston, for appellees.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

DAVID B. GAULTNEY, Justice.

On motion for rehearing, our prior opinion was withdrawn. The following opinion is substituted in its place.

This dispute is over equipment manufactured by Tri–Flo International, Inc. that

Conquest Drilling Fluids, Inc., says never worked. Tri–Flo executed a contract to build an oilfield-related "encapsulation unit." One of the buyers was Coastal Mud, Inc., acting as a funding entity for Grant Peterson, president of Conquest, the eventual owner. Coastal sold the equipment to Conquest and then assigned the litigation rights concerning the unit to Conquest.

Alleging defects in the equipment, Conquest sued Tri–Flo. The trial court granted summary judgment against Conquest on its DTPA, negligence, and negligent misrepresentation causes of action. A jury returned a verdict for Conquest on breach of contract and breach of warranty claims, and awarded Conquest $553,172.48 in damages on each claim and also attorney's fees through trial and on appeal. The trial court granted Tri–Flo's JNOV motion in part, and signed a judgment in favor of Conquest for $188,851 in actual damages on the breach of express warranty claim, and awarded attorney's fees, in an amount less than the jury found reasonable and necessary. Both parties appealed.

## Tri–Flo's Issues

### Statute of Limitations

■ Tri–Flo contends Conquest's breach of contract and breach of warranty claims are barred by the two-year limitations provision contained in the contract. "By the original agreement the parties may reduce the period of limitation to not less than one year...." *See* Tex. Bus. & Com.Code Ann. § 2.725(a) (Vernon 1994). The trial court denied Tri–Flo's motion for a directed verdict on limitations.

■ A directed verdict for a defendant is proper if the evidence conclusively establishes a defense to the plaintiff's cause of action. *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex.2000). For a directed verdict to be proper on limitations, Tri–Flo must conclusively establish the date on which the causes of action accrued and the date on which suit was filed. *See Upjohn Co. v. Freeman*, 885 S.W.2d 538, 541 (Tex.App.-Dallas 1994, writ denied). Suit was filed June 22, 1998. The issue in dispute is the accrual date.

■ Because the trial court entered judgment on the breach of warranty claim and not the breach of contract claim, we focus our analysis on the statute of limitations governing the breach of warranty claim, though the testimony and arguments concerning actual delivery and tender of delivery overlap. In a sale of goods, a "breach of warranty occurs when tender of delivery is made," unless the warranty explicitly extends to future performance. *See* Tex. Bus. & Com.Code Ann. § 2.725(b) (Vernon 1994). Under the Business and Commerce Code, "[t]ender of delivery" requires the seller to "put and hold conforming goods at the buyer's disposition" and give the buyer any notification reasonably necessary to enable him to take delivery; "[t]ender of delivery is a condition to the buyer's duty to accept the goods...." Tex. Bus. & Com.Code Ann. §§ 2.503(a), 2.507(a)(Vernon 1994). For the purpose of determining when the statute of limitations starts to run on a breach of warranty claim, we construe the term "tender" to refer to an offer of goods "under a contract as if in fulfillment of its conditions even though there is a defect when measured against the contract obligation." *See* Tex. Bus. & Com.Code Ann. § 2.503 cmt. 1 (Vernon 1994); *Navistar Int'l Corp. v. Hagie Mfg. Co.*, 662 F.Supp. 1207, 1210 (N.D.Ill.1987).

Tri–Flo says there is evidence it put and held conforming goods for the buyer's disposition on February 15, 1996, and gave reasonable notification necessary for deliv-

ery to be taken. As a result, Tri–Flo argues, Conquest's filing of suit on June 22, 1998, was outside the two-year statute of limitations provided by the contract. Conquest says there is no evidence delivery occurred on February 15, 1996.

To support the February 1996 date, Tri–Flo points to testimony in the record showing that the requirements of section 2.503, the tender statute, were met on that date. It is undisputed that Rebecca Stokes, president of Coastal Mud, made final payment on February 15, 1996, and that she and Peterson were present at the Tri–Flo yard on that day. David Allen, a Tri–Flo employee, testified as follows:

> Q. (The Court): ... [A]re you talking about 2–15–96?
>
> A. (Tri–Flo's Attorney): Yes, sir, Your Honor.
>
> Q. (The Court): All right. Does that change your answer?
>
> A. (Allen): No, sir, that's the date I had in mind.
>
> . . . .
>
> Q. (Tri–Flo's Attorney): [W]hat did Tri–Flo do on the day that that payment was made?
>
> A. Well, it's my job to actually release the equipment for delivery for the customer, and I authorized payments received. It's clear, no liens, no holdings, no conditions left, the equipment is considered delivered.
>
> . . . .
>
> A. I released the equipment for delivery to the customer.
>
> Q. [W]as Coastal Mud's representative there, Mrs. Becky Stokes, on at [sic] that day?
>
> A. Yes, she was.

> Q. And was Mr. Grant Peterson there as a representative of Coastal Mud on at that day?
>
> A. Grant Peterson was there, yes.
>
> . . . .
>
> Q. Between February the 14th, '96 and July the 10th of '96, was there anything done to the unit by Tri–Flo?
>
> A. Not to my knowledge. It was moved to the back 40 acres we have back there, out of our assembly work out, moved up the hill.
>
> . . . .
>
> Q. When this unit was constructed and finished and it was paid for on February the 15th, 1996, was it ready to be used in an oil site location?
>
> A. It was field ready, yes.

On cross-examination, Allen testified he did not know what Peterson's designated shipment location was, and he agreed with the statement that the removal of the unit to Integrity's yard[1] on July 11, 1996, "could be a shipment." Conquest also interprets Allen's testimony to reflect a possible June 1998 shipment and delivery date. Conquest argues the evidence establishes July 11, 1996, as the earliest possible delivery or shipment date.

Tri–Flo employee, James Andrews, Jr., testified concerning the unit's status on February 15, 1996:

> Q.(Tri–Flo's attorney): Okay. In this particular unit, are you aware that on February the 15th, 1996, that the final payment was made for this unit?
>
> . . . .
>
> A. (Andrews): No, sir, I don't know the final payment was made, but I do know the unit was moved at that time.
>
> Q. What does that indicate to you when the unit is moved?

---

1. Integrity was an oil mud company which had a facility in Conroe.

A. Whenever a unit is moved up the hill for us, we're done with this assembly, therefore, the customer has taken possession of it.

Q. Is it Tri–Flo's custom that if a customer does not have a place or location to move something, what is the procedure or what is the policy that Tri–Flo has in place?

. . . .

A. Oftentimes Tri–Flo will leave it there on the premises. We have a place up the hill we can put the unit.

Q. Do you do that for many or few clients?

A. Every one I know of, sir.

Rebecca Stokes also testified regarding the sequence of events around February 15, 1996.

Q. (Tri–Flo's Attorney): After you were advised that the equipment was ready to be delivered, it was at that time that Coastal Mud made its final payment?

A. (Stokes): Yes.

. . . .

Q. Okay. But that [the check] did represent final payment—

A. Yes.

Q. —so that delivery could be completed?

A. Yes.

Q. Okay.

A. It was represented to me that the equipment was ready.

Q. Okay. And—

A. And needed final payment.

. . . .

Q. Coastal Mud, Inc. on the date that it took delivery never rejected the encapsulation unit at that time?

A. Coastal Mud, Inc. did not take delivery of the equipment. Coastal Mud,

Inc. paid its final payment on the day it was told to do so by Grant Peterson.

Q. Okay. So you're saying that Grant Peterson took delivery.

A. Exactly.

. . . .

Q. Okay. And I believe you've testified that Grant Peterson was inspecting the unit periodically and ongoing as it was being built and constructed.

A. Grant Peterson lived in Conroe, Texas. Larry Dow—the Tri–Flo yard was in Conroe, Texas and I think on a daily basis he was overseeing that.

Stokes also indicated that after she made the February 1996 final payment, the unit was malfunctioning and remained at Tri–Flo's yard. She said Larry Dow, Tri–Flo's president, told her he "would take care of those problems, that it was going to work fine." Steve Smith, a Conquest employee, testified the unit had malfunctioning parts: the motors kept overheating and burning up. He indicated that in June 1996 Conquest was still testing the unit before taking possession from Tri–Flo.

The final payment having been made, Peterson acknowledged he could have removed the unit on February 15; but he also testified it was not finished, and Tri–Flo said it would not spend more time on the unit without that payment. Like Stokes and Smith, Peterson indicated that parts on the unit were malfunctioning; Peterson said the unit continued to malfunction and did not pass an electrical inspection even after the equipment was moved from Tri–Flo's yard to Integrity's Conroe facility in July 1996. Because the unit continued to malfunction and did not pass an electrical inspection by an independent company, the equipment was moved back to Tri–Flo's yard in December 1996 so that Tri–Flo could "make things right."

Conquest further argues delivery could not have occurred at Tri–Flo's facility in February 1996, because the contract indicates delivery was to be made at a location other than Tri–Flo's facility. The contract provides FOB warehouse on one line; another line below it says "Warehouse Conroe, Texas." Allen testified the delivery point meant Tri–Flo's warehouse in Conroe, but he also acknowledged Tri–Flo's warehouse is not in Conroe. He explained that Tri–Flo always uses Conroe as its warehouse location, although the warehouse is located between the towns of Conroe and Willis. Stokes referred to the Tri–Flo "yard" as being located in Conroe and described the Tri–Flo facility where she saw the equipment being manufactured as being in Conroe.

Tri–Flo maintains it put and held conforming goods and gave reasonable notification for the buyer to take delivery. And the record contains some evidence that on February 15, 1996, the unit was paid for, the buyers were present at the Tri–Flo yard, the unit was "field ready," and it was released to the customer and "moved up the hill."

Conquest says no tender of delivery could have occurred at that time and place, and cites evidence the unit was not complete and never functioned properly. Implicit in this argument is the recognition that due tender of delivery could not occur while the equipment was still in the process of being manufactured. Conquest also argues delivery could not have occurred at the Tri–Flo yard, because the yard was not located in Conroe—a reference to the contract's FOB warehouse requirement. Instead, Conquest maintains the unit was shipped to Integrity's yard in July 1996, and that date is the earliest possible delivery date.

In determining whether the trial court erred in denying a motion for directed verdict, an appellate court considers all the evidence in the light most favorable to the nonmovant, disregards all evidence to the contrary, and resolves all reasonable inferences in favor of the nonmovant. *Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 265 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). Fact issues must be resolved by the factfinder, in this case the jury. The credibility of the witnesses' testimony is for the jury to determine. Considering Peterson's testimony in the light most favorable to Conquest and ignoring all evidence to the contrary, there is some evidence the equipment was not finished by February 15, 1996, and the payment was made for the purpose of having Tri–Flo complete the unit. If the jury believed Peterson, the jury could infer the manufacturing process was still underway in February 1996, and could infer that tender of delivery was not made at that time because the parties knew the unit was not yet complete.

■ On this record of conflicting testimony, we conclude a fact issue exists as to the date tender of delivery occurred. The trial court correctly held Tri–Flo was not entitled to a directed verdict on limitations on the breach of warranty claim. *See generally Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex.2001) (accrual is a legal question, but there may be underlying fact question). The conflicting testimony likewise precluded a directed verdict on the breach of contract claim. A breach of contract claim arising from the sale of goods accrues when the contract is breached, *e.g.*, when the seller fails to make delivery of the goods. *See Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex.2002); *Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex.1991); Tex. Bus. & Com.Code Ann. §§ 2.711(a), 2.725 (Vernon 1994). The testimony on delivery is conflicting. Tri–Flo's issue one, complaining of the denial of the motion for directed

verdict based on limitations, is overruled. And for the same reason we overrule Tri–Flo's issue three, which complains of lack of timely notice of any defects in the unit within ninety days of shipment or acceptance of the unit.[2] The evidence does not conclusively establish the date of tender, delivery, shipment, or acceptance.

THE REQUESTED QUESTION

■■■■ Tri–Flo argues the trial judge erred in failing to submit a jury question to support Tri–Flo's limitations defense. Tri–Flo's requested question concerning tender of delivery was as follows:

> What date, if any, did Tri–Flo International, Inc. tender delivery of the encapsulation unit to Coastal Mud, Inc.
>
> Your answer shall include the day, month and year.
>
> Answer: ———

> INSTRUCTION: (1) Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable [h]im to take delivery. The manner, time and place for tender are determined by the agreement and in particular
>
> (a) tender must be at a reasonable hour, and if it is of goods they must be kept available for the period reasonably necessary to enable the buyer to take possession; but
>
> (b) unless otherwise agreed the buyer must furnish facilities reasonably suited to the receipt of the goods.

If an issue is properly pleaded and is supported by evidence, a party is entitled to have controlling fact questions submitted to the jury. *Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 718 (Tex. 1995); *Wright Way Constr. Co., Inc. v. Harlingen Mall Co.,* 799 S.W.2d 415, 422 (Tex.App.-Corpus Christi 1990, writ denied). Tender of delivery is a disputed issue on which there is conflicting testimony. The instruction tracks the statutory requirements of "tender of delivery" in section 2.503(a) of the Texas Business and Commerce Code, and the jury's finding in response to the question would determine a controlling fact issue. *See generally Union Pac. R.R. Co. v. Williams,* 85 S.W.3d 162, 166–69 (Tex.2002) ("A party is entitled to a jury question, instruction, or definition if the pleadings and evidence raise an issue."); *Southwestern Bell Tel. Co. v. John Carlo Texas, Inc.,* 843 S.W.2d 470, 472 (Tex.1992).

Conquest argues that Tri-Flo's tender of delivery issue is not in substantially correct form to support an affirmative defense of limitations, because the relevant question, based on the parties' contract, concerns the date of shipment. The contract says goods will be of good quality when "shipped" and that the buyer must give written notice of defects within 90 days of shipment. Conquest relies on the FOB [3] warehouse and "Warehouse Conroe" language in the contract to suggest that the date of shipment or removal from Tri-Flo's yard is the critical date for accrual of the cause of action. Conquest also seems to argue the question submitted by

---

**2.** The contract speaks of the notice requirement as being "within 90 days from shipment." Tri–Flo's brief variously speaks of notice "within 90 days of shipment" and "90 days of acceptance."

**3.** FOB is a delivery term meaning "free on board"; when linked with other identifying information—the place of shipment or the place of destination, and possibly also vessel, car, or other vehicle—the term identifies duties related to the shipment or delivery of the goods. *See* TEX. BUS. & COM.CODE ANN. §§ 2.319, 2.503, 2.725 (Vernon 1994).

Tri–Flo should have included additional language from the tender of delivery statute.

The parties dispute where delivery was to occur. The manner of due tender of delivery is subject to the parties' agreement and the Code provisions governing shipment terms, as well as the Code's other provisions. *See* TEX. BUS. & COM.CODE ANN. § 2.503. Official Comment 1 to section 2.503 explains that the "[t]he term 'tender' is used in this Article in two different senses. In one sense it refers to 'due tender' which contemplates an offer coupled with a present ability to fulfill all the conditions resting on the tendering party and must be followed by actual performance if the other party shows himself ready to proceed.... At other times it is used to refer to an offer of goods or documents under a contract as if in fulfillment of its conditions even though there is a defect when measured against the contract obligation." TEX. BUS. & COM. CODE ANN. § 2.503 cmt. 1 (Vernon 1994); *see Navistar Int'l Corp.*, 662 F.Supp. at 1210. In the context of determining when the statute of limitations started to run on the breach of warranty claim—which is the reason for the requested jury question— we construe "tender" as used in the latter sense: an offer of goods under a contract as if in fulfillment of its conditions even though there is a defect when measured against the contract obligations. We conclude that, for purposes of determining when the statute of limitations on the breach of warranty claim began to run, the appropriate inquiry was substantially the one Tri–Flo requested be submitted—what was the date of tender of delivery.

■ Conquest says Tri–Flo did not preserve error, because Tri–Flo did not object to the omission of the question from the charge. Tri–Flo did submit a question on the issue, and the trial court rejected it.

Under the circumstances of this case, this was sufficient to preserve error, as the trial court was made aware of the complaint in a clear and timely manner, and a ruling was obtained. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 240–41 (Tex.1992) (The test for preservation of error concerning the jury charge is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.). The issue is not whether the trial court should have asked the jury the specific question requested by Tri–Flo. The issue is whether Tri–Flo's request called the trial court's attention to Tri–Flo's complaint, that no limitations question was submitted to the jury, sufficiently to preserve that complaint on appeal. *Id.* at 239–240.

Conquest also argues that the jury, in answering question three, "must have found" either July 10, 1996, or June 1998, and not February 15, 1996, to be the date of shipment; this suggests one of the later dates as the date of the accrual of the cause of action. Question three is derived from the provision in the contract that requires the buyer to give Tri–Flo written notice of its claims for defects within 90 days from shipment of the unit. Based on the jury's "yes" answer to question three, Conquest, in effect, asks this Court to accept a June 1996 letter from Stokes to Larry Dow as being the written "notice" that the jury relied upon in answering the question; based on that interpretation, we are then asked to further conclude that the jury's "yes" answer means February 15, 1996, could not have been the date of delivery, because more than 90 days elapsed between February and June 1996.

We decline to infer findings the jury did not expressly make, which we would have to do to accept an evidentiary analysis not expressed in the jury's answers. The focus of question three was on the date of

actual shipment, and on the written 90 day notice requirement; the focus was not on "tender" of delivery in the sense of that term sufficient to start limitations running.

The trial court erred in refusing to submit a jury question concerning tender of delivery. Error in the jury charge is reversible only if the error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. Tex.R.App. P. 44.1(a). To determine harm, a reviewing court must consider the entire record, including the parties' pleadings, the evidence, and the charge. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex.1998). If the error in the charge relates to a contested issue and the evidence is sharply conflicting, the error will likely require reversal. *See, e.g., Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex.2001) (Erroneous instruction on causation in age discrimination case was reversible error.); *John Carlo Texas, Inc.*, 843 S.W.2d at 472 (Trial court's failure to define justification, a defensive issue, was not harmless error.). The pleadings and the evidence support the submission of a jury question on tender of delivery. The date bears directly on Tri–Flo's limitations defense to the breach of warranty claim. We hold the error requires reversal and a new trial.

The trial court also refused to submit a question on the disputed issue of acceptance. We need not address that claimed error in detail, as we have concluded the case must be retried. But the approach is the same. Controlling fact questions supported by the pleadings and the evidence should be submitted to the jury for determination.

Before remanding the case for a new trial, we will address Conquest's claims on which the trial court denied relief as a matter of law.

### Conquest's Issues

#### Breach of Contract

The jury found in favor of Conquest on its breach of contract claim and its breach of warranty claim. Besides attorney's fees, judgment was rendered in Conquest's favor only on the breach of express warranty claim. Conquest contends the trial court erred in entering a judgment "that did not include liability on the Defendant for breach of contract."

Tri–Flo responds there was no privity of contract between Tri–Flo and Conquest. But Conquest relies on Coastal's assignment of Coastal's "litigious rights" to Conquest. That document effectively assigned Coastal's cause of action for breach of contract to Conquest, and Conquest is asserting Coastal's claims under the contract. *See* Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, sec. 2.210, 1967 Tex. Gen. Laws 2343, 2365–66 (amended 1999) (current version at Tex. Bus. & Com.Code Ann. § 2.210 (Vernon Sup.2004)). Tri–Flo's lack of privity argument does not defeat that claim.

Tri–Flo also argues, among other things, that Conquest has no cause of action for breach of contract because the evidence conclusively established Tri–Flo delivered the unit and Coastal accepted it without rejection. But, as we have detailed, the evidence is conflicting on delivery and acceptance, and on the timeliness of notice. Given the record we are presented, and the necessity of a remand for a new trial, we leave the issue of whether Conquest has a breach of contract claim for review first by the trial court based on the evidence presented at the new trial.

#### The Summary Judgment

Conquest also asserted claims based on DTPA violations, negligence, and

negligent misrepresentation—causes of action which the trial court disposed of by summary judgment.[4] Tri–Flo attached the contract and some deposition excerpts to its motion for summary judgment, but the motion principally asked for judgment on the pleadings. If summary judgment is granted on the pleadings, an appellate court reviews the pleadings, takes all allegations and inferences in the pleadings as true, and views them in a light most favorable to the pleader. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994). The reviewing court will affirm the summary judgment on the pleadings only if the non-movant's pleadings are legally insufficient. *Id.*

Conquest says it should have been given an opportunity to replead before the summary judgment was granted. *See Friesenhahn v. Ryan*, 960 S.W.2d 656, 659 (Tex. 1998). But Conquest did replead. Tri–Flo filed its summary judgment motion on August 3, 2000. Conquest filed a third amended petition on September 20, 2000, before the trial court granted Tri–Flo's motion for summary judgment on the DTPA claims on March 29, 2001.

DTPA

Tri–Flo's motion asserts that Conquest's DTPA "laundry list" allegations are nothing more than breach of contract claims. Conquest's third amended petition asserts five violations under TEX. BUS. & COM.CODE ANN. § 17.46(b)(2), (5), (7), (9), (24) (Vernon Supp.2004).[5] The gist of Conquest's allegations concerning subsections (2), (5), and (7) is that Tri–Flo represented the unit would have certain characteristics, benefits, and uses and the

unit would be a "particular standard, quality or grade," of "good quality," and "free of defects in material and workmanship." In *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13–14 (Tex.1996), the Supreme Court considered the relationship of contract law and the DTPA and concluded that an allegation of mere breach of contract, without more, does not allege a violation of the DTPA. The defendant's alleged representations in *Crawford* were simply representations that the defendant would fulfill its duty under the contract. *Id.* at 14. The mere failure to later perform a contract does not constitute misrepresentation within the meaning of the DTPA. *Id.* at 14–15. Tri–Flo's alleged failure to fulfill the promise to build an encapsulation unit of good quality and free from defects was, in effect, a pleading that Tri–Flo did not comply with the contract terms. The trial court properly granted summary judgment on Conquest's claim of DTPA violations under section 17.46(b)(2), (5), and (7).

Conquest included in its DTPA "laundry list" two claims that exist independently of Tri–Flo's duties under the contract. Specifically, Conquest pleaded that Tri–Flo advertised goods or services with the intent not to sell them as advertised. Conquest further pleaded that Tri–Flo violated the DTPA by failing "to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed[.]" A duty to

---

4. The record does not contain a signed order granting Tri–Flo's motion for summary judgment on the DTPA, negligence, and negligent misrepresentation claims. We know summary judgment was granted on those claims prior to final judgment, because the final judgment and the parties say so.

5. Conquest's pleadings cite to section 17.46(b)(23). We note that the statute has been amended, and subsection (23) is now subsection (24).

not act illegally to procure a contract is separate and independent from the duties established by the contract itself. *See, e.g., Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.,* 960 S.W.2d 41, 45–46 (Tex.1998). Conquest's allegations concerning violations under section 17.46(b)(9) and (24) involve deceptive conduct that Conquest says was intended to induce it to enter into a transaction it otherwise would not have entered. Conquest's DTPA claims under subsections (9) and (24) do not allege merely breach of contract, and the trial court erred in granting summary judgment on those pleadings.

■ Tri–Flo also moved for summary judgment on the ground that Conquest's DTPA claims based on breach of warranty are limited by the express terms stated in the contract. The contract provides that Coastal was to make any claims regarding defects within 90 days of shipment. Tri–Flo says Conquest did not comply with the 90–day contractual requirement. But as we have detailed, nothing in this record conclusively establishes the shipment date of the unit. Summary judgment was not proper on the 90–day notice requirement.[6]

NEGLIGENCE AND NEGLIGENT MISREPRESENTATION

■ Conquest also contends the trial judge erred in granting summary judgment against Conquest on its negligence and negligent misrepresentation causes of action. Tri–Flo's motion for summary judgment ground says Conquest's allegations, even if taken as true, can only be characterized as contract claims. Conquest pleaded that Tri–Flo "negligently [sold] a substandard product which did not meet or exceed even minimal industry standards, codes, and quality control standards" and failed "to provide Plaintiffs and others with a viable product which would meet or exceed the representations made by the Defendants[.]" Conquest's negligence and negligent misrepresentation claims are in substance contract claims relabeled as torts. *See Formosa Plastics Corp. USA,* 960 S.W.2d at 47; *Yzaguirre v. KCS Resources, Inc.,* 47 S.W.3d 532, 543 (Tex.App.-Dallas 2000), *aff'd,* 53 S.W.3d 368 (Tex.2001); *but see Kajima Int'l, Inc. v. Formosa Plastics Corp., USA,* 15 S.W.3d 289, 292–294 (Tex.App.-Corpus Christi 2000, pet. denied). The trial court was correct in granting summary judgment on those claims.

■ On appeal and in its responses to Tri–Flo's summary judgment motion, Conquest also argues that its pleadings include a claim for fraudulent inducement. Neither of Tri–Flo's motions for partial summary judgment, however, encompasses that cause of action. The judgment says the trial court granted Tri–Flo's motion for summary judgment on all claims except breach of warranty, breach of contract, and attorney's fees. It appears summary judgment was granted on a claim not addressed in Tri–Flo's motions. Summary judgment may be granted only on grounds raised by the movant in its motion. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 339–41 (Tex.1993). We conclude the trial court erred in granting summary judgment on Conquest's fraudulent inducement claim.

We need not address the parties' remaining complaints on appeal, as we have determined a new trial is required. We

6. *See Southwestern Bell Tel. Co. v. FDP Corp.,* 811 S.W.2d 572, 576–77 (Tex.1991); *Lochinvar Corp. v. Meyers,* 930 S.W.2d 182, 189–190 (Tex.App.-Dallas 1996, no writ)("Ordinarily, notice [that a breach of warranty has occurred] is a question of fact to be determined by the trier of fact.").

affirm the trial court's rulings on the negligence and negligent misrepresentation claims, and on the section 17.46(b)(2),(5) and (7) DTPA claims. We reverse the judgment in all other respects and remand for a new trial.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.