Paul Verret and Suzanna Verret v. Am. Biltrite, Inc., et al.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-244-CV

PAUL VERRET AND SUZANNE VERRET APPELLANTS

V.

AMERICAN BILTRITE, INC., CERTAINTEED APPELLEES

CORPORATION, BONDEX INTERNATIONAL, 

INC., REPUBLIC POWDERED METALS, AND 

UNION CARBIDE CORPORATION

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

The primary issue that we address in this negligence and products liability appeal involving potential concurrent causes of mesothelioma from exposure to asbestos is whether the trial court erred by failing to give the jury the correct statement of Louisiana law relative to the substantial factor test for determining cause-in-fact.  For the reasons set forth below, we hold that the trial court did err by failing to incorporate the substantial factor test into the jury instruction on causation but that the error did not probably cause rendition of an improper judgment.  Accordingly, we affirm the trial court’s judgment.

II.  Factual and Procedural Background

Appellants Paul and Suzanne Verret, brother and sister, grew up in and around New Orleans and lived there at the time of trial.  Their father owned and operated a remodeling business called West-Side Home Improvement.  Paul worked at West-Side during summer vacations from 1956 or 1957 until 1968, served in the military for a year, and then returned to work at West-Side from 1969 to 2003.

The Verrets lived in a neighborhood located approximately one mile from the Johns-Manville plant, which used crocidolite asbestos in making its products.  An extraordinarily high rate of mesothelioma exists in this community.

In 2002, Suzanne was diagnosed with mesothelioma.  Thereafter, she filed suit in Tarrant County against American Biltrite; Bondex International; CertainTeed Corporation; Congoleum Corporation; Flintkote Company; Georgia Pacific Corporation; National Service Industries, Inc.; Texas Refinery Corp.; Union Carbide Corporation; and Republic Powdered Metals, alleging that she was exposed to asbestos fibers from their products, which were carried home on her father’s and her brother’s clothing from their work at West-Side.  In January 2003, Paul was diagnosed with mesothelioma and filed suit in Tarrant County against the same defendants that Suzanne had brought suit against. Although the two suits were not formally consolidated, Suzanne’s and Paul’s cases were tried together.  During the trial, Flintkote and Georgia Pacific settled, and the trial court granted a directed verdict in favor of Texas Refinery. At the conclusion of the twenty-one-day jury trial, the jury found the remaining defendants not liable, and the trial court signed a final judgment ordering that Appellants take nothing against the remaining defendants.  This appeal followed, contesting the trial court’s alleged failure to submit the appropriate Louisiana law on causation to the jury.

III.  Jury Charge Error

In connection with the products liability jury questions,
(footnote: 2) the trial court gave the following causation instruction to the jury:

As to the requirement that Paul Verret’s injury be caused by 
a
 defendant’s conduct, I do not mean that the law recognizes only one cause of any injury, consisting of only one factor or thing, or the conduct of only one person.  On the contrary, many factors or things may operate at the same time, either independently or together, to cause injury or damage.  You should resolve this question by deciding whether Paul Verret would probably not have suffered the claimed injuries in the absence of 
a
 defendant’s conduct.  If Paul Verret probably would have suffered those injuries regardless of what the defendant did, then you must conclude that the injuries were not caused by the defendant.  If, on the other hand, Paul Verret probably would not have suffered the claimed injuries in the absence of 
a
 defendant’s conduct, then you must conclude that defendant’s conduct did play a part in Paul Verret’s injury.  [Emphasis added.]

In their first issue, Appellants argue that the trial court failed to give the jury the correct statement of Louisiana law
(footnote: 3) relative to the substantial factor test for determining cause-in-fact.  In their second issue, Appellants contend that the jury instruction given by the trial court was so inadequate as to deprive them of the right to a fair trial.

A. Preservation of Charge Complaint

1.  In the trial court

Appellees contend that the Verrets failed to preserve in the trial court the charge issue that they now raise concerning all jury questions except jury questions 1, 2, and 3.  To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a); 
see also
 
Tex. R. Evid.
 103(a)(1).  If a party fails to do this, error is not preserved, and the complaint is waived.  
Bushell v. Dean
, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh’g).  The trial court must rule on the objection either expressly or implicitly.  
Tex. R. App. P.
 33.1(a); 
Wrenn v. G.A.T.X. Logistics
,
 Inc.
, 73 S.W.3d 489, 497 (Tex. App.—Fort Worth 2002, no pet.).  If the trial court refuses to rule, an objection to the refusal to rule is sufficient to preserve error.  
Tex. R. App. P.
 33.1(a)(2).

Here, Appellants objected in the trial court only to jury questions 1, 2, and 3.  With regard to jury questions 4 through 18, Appellants made no specific objections at trial.  Therefore, Appellants preserved any alleged charge error with regard to only jury questions 1, 2, and 3.  
See
 
Tex. R. App. P.
 33.1(a).  Appellants complaints concerning the “but for” causation instruction provided to the jury in connection with jury questions 4, 6, 7, 8, 12, 13, 14, 16, 17, and 18 are not preserved for our review.

On appeal, Appellants appear to rely on their objection to jury question 3— “[T]he same objections as throughout this, Your Honor, as to the Court’s Charge on proximate cause, in that it includes essentially a ‘but for’ instruction”—and the submission of their proposed jury instructions, as well as discussions off the record, to contend that they preserved any alleged error as to the remaining jury questions containing the “but for” causation instruction. The rules of civil procedure expressly prohibit the “same objection throughout” type of global objection to the charge.  
See
 
Tex. R. Civ. P.
 274 (“No objection to one part of the charge may be adopted and applied to any other part of the charge by reference only.”).  Concerning Appellants’ contention that they preserved error by tendering proper instructions, they tendered forty-three different instructions, many of them duplicative or variations of the same instruction, and the record contains no indication of which questions Appellants contended these instructions should be submitted with.  In fact, an informal charge conference apparently took place off the record, and when the parties and the court were prepared for the official charge conference, the trial court specifically told Appellants, “Counsel, everything needs to be on the record at this point.  Any objection you have must be on the record at this time.”  As discussed, Appellants’ only objections on the record are to jury questions 1, 2, and 3.  Accordingly, Appellants failed to preserve error with regard to jury questions 4 through 18, which included the jury questions related to Suzanne’s causes of action.

Finally, the court’s charge did not contain any question asking the jury to determine whether Appellee Republic Powdered Metals was liable for Paul and Suzanne Verret’s injuries, and Appellants did not object to this omission.  Consequently, any charge error concerning Republic Powdered Metals is waived.  
See 
Tex. R. App. P.
 33.1(a); 
see also SeaRiver Maritime
,
 Inc. v. Hentz
, No. 01-99-00168-CV, 2000 WL 298425, at *5 (Tex. App.—Houston [1st Dist.] Mar. 23, 2000, pet. denied) (not designated for publication) (holding that trial court did not err by refusing liability question regarding independent contractor and that SeaRiver waived error about trial court’s failure to include independent contractor in comparative fault question).

We overrule Appellants’ first and second issues to the extent that they complain of the “but for” causation instruction submitted with jury questions 4, 6, 7, 8, 12, 13, 14, 16, 17, and 18.  We likewise overrule Appellants’ first and second issues to the extent that they purport to assert complaints against Republic Powdered Metals.

2.  In the appellate court

Jury question 1 asked whether Appellees
(footnote: 4) were negligent in causing an asbestos-related injury to Paul.  Appellants’ brief contains no express or implied challenge to jury question 1.  Because Appellants did not brief any challenge to jury question 1, any error in that question is not properly before us.  
See e.g.
,
 Fredonia State Bank v. Gen. Am. Life Ins. Co.
, 881 S.W.2d 279, 284 (Tex. 1994).  Thus, although jury question 1 contains the same “but for” causation instruction, it is not challenged in this appeal.

B. Standard of Review

Having determined that the charge error alleged by Appellants to exist in jury questions 2 and 3 has been preserved for our review, we now proceed with our analysis to determine whether, in fact, error exists in the court’s charge.  The standard of review for alleged jury charge error is abuse of discretion.  
Steak & Ale of Tex.
,
 Inc. v. Borneman
, 62 S.W.3d 898, 904 (Tex. App.—Fort Worth 2001, no pet.).  A trial court abuses its discretion by acting arbitrarily, unreasonably, or without consideration of guiding principles.  
Id.

When submitting the jury charge, a trial court is afforded more discretion when submitting instructions than when submitting questions. 
 
Id.
  However, the discretion afforded during the submission of instructions is not absolute.  
See
 
Tex. R. Civ. P.
 277.  According to rule 277, a trial court must submit instructions “as shall be proper to enable the jury to render a verdict.”  
Id.
 For an instruction to be proper, it must (1) assist the jury, (2) accurately state the law, and (3) find support in the pleadings and the evidence.
  Borneman
, 62 S.W.3d at 904-05. 
 An instruction that misstates the law as applicable to the facts or one that misleads the jury is improper.  
Id. 
at 905. 
C. Louisiana Law on Concurrent Causation

To determine whether the charge provided the jury with correct principles of law, we look to Louisiana jurisprudence.  According to Louisiana jurisprudence, when evaluating liability in an asbestos claim, the court is required to apply traditional theories of tort liability (for example, negligence and products liability) that require proof of causation.  
See Quick v. Murphy Oil Co.
, 93-2267, (La. App. 4 Cir. 9/20/94); 643 So. 2d 1291, 1294.  Asbestos cases typically involve multiple defendants, and courts have analyzed the cases under concurrent causation, a doctrine that “proceeds from the assumption that more than one defendant substantially contributed to the plaintiff’s injury.”  
Id.
 at 1294.

The first element of proof under either negligence or products liability is causation.  
Id.
 at 1295.  Cause-in-fact usually is a “but for” inquiry, which tests whether the injuries would or would not have occurred but for the defendant’s substandard conduct.  
Perkins v. Entergy Corp.
, 2000-1372 (La. 3/23/01); 782 So. 2d 606, 611 (citing 
Boykin v. La. Transit Co.
, 96-1932, pp.8-9 (La. 3/4/98); 707 So. 2d 1225, 1230).
  Where there are concurrent causes of an injury, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the injury.  
Id.
 at 611.  The substantial factor rule was developed primarily for cases in which application of the “but for” rule would allow each defendant to escape responsibility because the conduct of one or more others would have been sufficient to produce the same result.
  
W. Page Keeton, et al., Prosser and Keeton on the Law of Torts 
§ 40, at 260 (5th ed. 1984).  Louisiana courts have applied the “substantial factor” test to determine whether exposure to a particular asbestos-containing product was a cause-in-fact of a plaintiff’s asbestosis; that is, the exposure has to be a substantial contributing factor to the plaintiff’s disease.  
See Vodanovich v. A.P. Green Indus.
,
 Inc.
, 2003-1079 (La. App. 4 Cir. 3/3/04); 869 So. 2d 930, 932;
 Egan v. Kaiser Aluminum & Chem. Corp.
, 94-1939 (La. App. 4 Cir. 5/22/96); 677 So. 2d 1027, 1034-35; 
Quick
, 643 So. 2d at 1295-97.

D. Analysis of Jury Charge Used in This Case

Reviewing the jury instruction above that was given in this case, it is clear that the instruction does not contain the substantial factor test.  Despite this deficiency, Appellees argue that this instruction is permissible because it is taken from the pattern jury instruction contained in the 
Louisiana Civil Law Treatise
.  However, the first comment to that pattern jury instruction states, “This is a purposeful intent to steer between what are probably the two extremes of instructions on causation:  ‘the substantial factor’ instruction . . . and the ‘but for’ test.”  
See
 18 H. Alston Johnson, III,
 Louisiana Civil Law Treatise:  Civil Jury Instructions 
§ 3.03 cmts. (2d ed. 2001).  Moreover, that instruction is listed in the pattern jury charges under “Negligence–Cause-in-fact,” generally, without regard to a situation involving multiple defendants and concurrent causation.  
See id.

Appellees also rely upon 
Bonin v. Ferrellgas
,
 Inc.
 to support the trial court’s use of the jury instruction on causation.  
See 
2003-3024 (La. 7/2/04); 877 So. 2d 89.  The jury instruction in 
Bonin
 is very similar to the one given by the trial court in this case.  
See id.
 at 93 & n.4.  However, the jury instruction in 
Bonin
 more closely tracks the pattern jury charge and does not include the article “a” before references to “defendant,” which is what the jury instruction in this case did.  
See id.
  Additionally, the court in 
Bonin
 did not implicitly or explicitly address the propriety of the jury instruction.  Instead, the opinion sets forth the jury instruction in a footnote and then proceeds to address the issue for which the Louisiana Supreme Court granted Empiregas’s writ application—whether the Third Circuit misapplied the manifest error/clearly wrong standard of review.  
Id.
 at 93-99.  During the court’s discussion of whether the Third Circuit misapplied the standard of review, the Louisiana Supreme Court applied the substantial factor test because more than one party’s conduct allegedly caused the fire.  
Id.
 at 94.  Therefore, we do not conclude that 
Bonin
 stands for the proposition that the Louisiana Supreme Court has moved away from applying the substantial factor test; instead, we hold that Louisiana case law requires that the substantial factor test be applied when determining cause-in-fact in a case involving concurrent causes.  
See Perkins
, 782 So. 2d at 612 & n.4 (stating “our case law is clear that the substantial factor test is the preferred test for causation when there are multiple causes, such as in the present case”); 
Boykin
, 707 So. 2d at 1230 & n.10 (stating that when there are concurrent causes of an accident which nevertheless would have occurred in the absence of one of the causes, the proper inquiry is whether the conduct under consideration was a substantial factor in bringing about the accident); 
Oliveaux v. St. Francis Med. Ctr.
, 39,147 (La. App. 2 Cir. 12/15/04); 889 So. 2d 1264, 1274 (charging the jury that “in a negligence action, the plaintiff must also show that the defendant’s conduct caused or was a substantial factor in her injury”); 
Vodanovich
, 869 So. 2d at 932-33 (stating that under Louisiana law, plaintiff bears burden of proving that defendants’ conduct caused asbestos exposure and that conduct was a substantial contributing factor of plaintiff’s injury); 
Emery v. Owens-Corp.
, 2000-2144 (La. App. 1 Cir. 11/9/01); 813 So. 2d 441, 450-51 (applying substantial contributing factor test in asbestos case); 
Egan
, 677 So. 2d at 1034-35 (same); 
Quick
, 643 So. 2d at 1295-97 (same); 
Manguno v. Babcock & Wilcox
, 961 F.2d 533, 534-36 (5th Cir. 1992) (same); 
see also Torrejon v. Mobil Oil Co.
, 2003-1426 (La. App. 4 Cir. 6/2/04); 876 So. 2d 877, 891 (discussing substantial factor test and comparing it to lesser standard of slight causation applied in Jones Act case).

Here, because concurrent causes were alleged, the trial court was required to instruct the jury on the substantial factor test for cause-in-fact.  Instead, the jury instruction that the trial court submitted was similar to a “but for” instruction, allowing each Appellee to escape responsibility if the conduct of one or more of the other Appellees would have been sufficient to cause Paul’s mesothelioma.  Consequently, the trial court failed to accurately state the law and thereby gave an improper instruction.  Therefore, we hold that the trial court erred by giving a “but for” causation instruction in a concurrent cause case.  We sustain Appellants’ first issue as to jury questions 2 and 3.

IV.  Harm Analysis

Having found error, we must now determine whether the error in the jury instruction given in connection with jury questions 2 and 3 is reversible. 
A. Standard of Review

Error in the jury charge is reversible only if the error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal.  
Tex. R. App. P.
 44.1(a); 
Owens-Corning Fiberglas Corp.
, 942 S.W.2d at 722.  To determine whether an improper jury charge constitutes reversible error, we must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety.  
Timberwalk Apartments
,
 Partners
,
 Inc. v. Cain
, 972 S.W.2d 749, 756 (Tex. 1998); 
Island Recreational Dev. Corp. v. Rep. of Tex. Sav. Ass’n
, 710 S.W.2d 551, 555 (Tex. 1986) (op. on reh’g).
  If the error in the charge relates to a contested issue and the evidence is sharply conflicting, the error will likely require reversal
.  See
,
 e.g.
,
 Quantum Chem. Corp. v. Toennies
, 47 S.W.3d 473, 480 (Tex. 2001) (holding erroneous instruction on causation in age discrimination case was reversible error); 
Conquest Drilling Fluids
,
 Inc. v. Tri-Flo Intern
,
 Inc.
, 137 S.W.3d 299, 308 (Tex. App.—Beaumont 2004, no pet.) (holding that trial court’s error in refusing to submit a jury question concerning tender of delivery was erroneous, requiring reversal and new trial).  If, however, either the pleadings or the evidence are insufficient to support submission of the issue that was incorrectly submitted, then the charge error is not reversible.  
See Alaniz v. Jones & Neuse
,
 Inc.
, 907 S.W.2d 450, 452 (Tex. 1995). 
B. The Evidence

We begin our harm analysis with an examination of the evidence.  The question of what constitutes legally sufficient evidence to support the submission of the substantial factor causation instruction in asbestos cases turns on exposure.  In asbestos cases, the term “exposure” refers to inhalation of asbestos fibers into the lungs.  
Asbestos v. Bordelon
,
 Inc.
, 1996-0525 (La. App. 4 Cir. 10/21/98); 726 So. 2d 926, 948.  Mere physical presence of asbestos-containing material is insufficient.  
Roberts v. Owens-Corning Fiberglas Corp.
, 2003-0248 (La. App. 1 Cir. 4/2/04); 878 So. 2d 631, 642.  In order for an exposure to result in an asbestos-related disease, the claimant must show that he had significant exposure to the product complained of to the extent that it was a substantial factor in bringing about his injury.  
Bordelon
, 726 So. 2d at 948.  Without frequent, regular exposure, courts are unwilling to hold that incidental uses of a product are a substantial factor in the causation of a plaintiff’s injuries.  
See id.

We have thoroughly reviewed the voluminous reporter’s record filed in connection with this appeal.  In general, Appellants attempted to show that each of their exposures to Appellees’ products containing asbestos was cumulative, such that each Appellee would be liable.  Appellees attempted to show that Appellants had not been exposed to their particular products or that Appellants’ exposures to Appellees’ products were not as frequent or regular as the exposures that Appellants experienced by virtue of living nearby to the Johns-Manville asbestos plant.  Although the evidence reveals that Paul came into contact with a variety of products containing asbestos, the evidence fails to show that Paul had frequent and regular exposure to the products made by Appellees.
(footnote: 5)
 Paul failed to quantify how often he was exposed to asbestos dust from American Biltrite’s Amtico floor tile.  Instead, he testified generally that he was “around” it when it was being installed and removed.  With regard to the Bondex joint compounds, Paul testified generally that he breathed in asbestos dust from joint compounds daily when he visited job sites.  However, he did not testify how often Bondex was used or how often Georgia Pacific joint compound (containing Union Carbide asbestos) was used, nor did he testify how close he was in proximity to the joint compound work at the job sites.  Dr. Crapo testified that merely being around joint compounds was not the level of exposure that would cause mesothelioma.  With regard to CertainTeed, Paul testified that he was exposed to asbestos dust from the cutting of asbestos cement pipe.  However, his testimony that he was present six times while CertainTeed pipe was installed and held such pipe twice while it was cut does not constitute frequent and regular exposure over forty-five years of work in the home improvement field.  Paul also testified that he was exposed to asbestos dust from the removal of asbestos shingles, felt, and siding on which he saw CertainTeed’s name, but CertainTeed’s corporate representative testified that CertainTeed never printed its name on these products.  The CertainTeed shingles that Paul claims to have removed in the 1960s were not made until the 1970s.  And, again, Paul did not quantify in any respect his alleged exposure to CertainTeed shingles, felt, or siding.

Because the record before us contains no evidence quantifying in any respect Paul’s exposures to Appellees’ products, there is no evidence that any exposures were frequent and regular.  Absent some evidence of frequent and regular exposure, Appellees’ products as a matter of law could not be found by the jury to be a substantial factor in causing Paul’s mesothelioma. Consequently, the trial court’s error in failing to instruct the jury on substantial factor causation did not probably cause the rendition of an improper judgment.  We overrule Appellants’ second issue.  Moreover, because we have held that the alleged exposures were not frequent and regular, we need not address whether the charge error in jury question 3 was harmless.  
See
 
Tex. R. App. P.
 47.1

V.  Conclusion

Having held that the jury charge error was not harmful, we affirm the trial court’s judgment on the jury’s verdict that Appellants take nothing.

SUE WALKER

JUSTICE

PANEL A: GARDNER, WALKER, and MCCOY, JJ.

DELIVERED:  August 31, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Out of the twenty-one jury questions, specifically jury question numbers 2 through 4, 6 through 8, 12 through 14, and 16 through 18 included this instruction.

3:
This case was tried under the substantive law of Louisiana, the state in which the alleged asbestos exposures occurred.  
See 
Tex. Civ. Prac. & Rem. Code Ann.
 § 71.031(b) (Vernon Supp. 2006);
 Owens-Corning Fiberglas Corp. v. Martin
, 942 S.W.2d 712, 721 (Tex. App.—Dallas 1997, no writ).

4:
As noted above, none of the questions in the jury charge asked whether Republic Powdered Metals was liable.  Our references in this section to “Appellees” include American Biltrite, CertainTeed Corporation, Bondex International, and Union Carbide Corporation.

5:
West-Side maintained extensive, meticulous business records and produced twenty-six boxes of business records to Appellees.  When Appellees attempted to question Paul about the contents of the boxes to see if he knew whether they contained any invoices for their products, he explained that he had browsed through the West-Side records but had not reviewed them completely.  Despite possession of these boxes of records, Paul did not introduce into evidence any invoices showing that West-Side used Appellees’ products.  Although their questions are not evidence, Appellees’ attorneys repeatedly asked Paul if he would be surprised to learn that the boxes of records contained not a single invoice for their products; Paul said that he would not be surprised.