In The









In The

 

Court of Appeals

 

Ninth District of Texas at
Beaumont

 

____________________

 

NO. 09-02-194 CV

____________________

 

CONQUEST DRILLING FLUIDS, INC.,
Appellant

 

V.

 

TRI-FLO INTERNATIONAL, INC.,
Appellee

 

 

 



On Appeal from the 359th
District Court

Montgomery County, Texas

Trial Court Cause No. 98-06-02213
CV

 

 

 



OPINION

            On
motion for rehearing, our prior opinion was withdrawn.  The following opinion is substituted in its
place.

            This
dispute is over equipment manufactured by Tri-Flo International, Inc. that
Conquest Drilling Fluids, Inc., says never worked.  Tri-Flo executed a contract to build an oilfield-related
“encapsulation unit.”  One of the buyers
was Coastal Mud, Inc., acting as a funding entity for Grant Peterson, president
of Conquest, the eventual owner. 
Coastal sold the equipment to Conquest and then assigned the litigation
rights concerning the unit to Conquest. 

            Alleging
defects in the equipment, Conquest sued Tri-Flo.  The trial court granted summary judgment against Conquest on its
DTPA, negligence, and negligent misrepresentation causes of action.  A jury returned a verdict for Conquest on
breach of contract and breach of warranty claims, and awarded Conquest $553,172.48
in damages on each claim and also attorney’s fees through trial and on
appeal.  The trial court granted
Tri-Flo’s JNOV motion in part, and signed a judgment in favor of Conquest for
$188,851 in actual damages on the breach of express warranty claim, and awarded
attorney’s fees, in an amount less than the jury found reasonable and
necessary.  Both parties appealed.

Tri-Flo’s Issues

Statute of Limitations

            Tri-Flo
contends Conquest’s breach of contract and breach of warranty claims are  barred by the two-year limitations provision
contained in the contract.  “By the
original agreement the parties may reduce the period of limitation to not less
than one year. . . .”  See Tex. Bus. & Com. Code Ann. §
2.725(a) (Vernon 1994).  The trial court denied Tri-Flo’s motion for a
directed verdict on limitations.  

            A
directed verdict for a defendant is proper if the evidence conclusively
establishes a defense to the plaintiff’s cause of action.  Prudential Ins. Co. of Am. v. Financial
Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000).  For a directed verdict to be proper on
limitations, Tri-Flo must conclusively establish the date on which the causes
of action accrued and the date on which suit was filed.  See Upjohn Co. v. Freeman, 885 S.W.2d
538, 541 (Tex. App.--Dallas 1994, writ denied).  Suit was filed June 22, 1998. 
The issue in dispute is the accrual date.   

            Because
the trial court entered judgment on the breach of warranty claim and not the
breach of contract claim, we focus our analysis on the statute of limitations
governing the breach of warranty claim, though the testimony and arguments
concerning actual delivery and tender of delivery overlap.  In a sale of goods, a “breach of warranty
occurs when tender of delivery is made,” unless the warranty explicitly extends
to future performance.  See Tex. Bus. & Com. Code Ann. §
2.725(b) (Vernon 1994).  Under the
Business and Commerce Code, “[t]ender of delivery” requires the seller to “put
and hold conforming goods at the buyer’s disposition” and give the buyer any
notification reasonably necessary to enable him to take delivery; “[t]ender of
delivery is a condition to the buyer’s duty to accept the goods . . . .”  Tex.
Bus. & Com. Code Ann. §§ 2.503(a), 2.507(a)(Vernon 1994).  For the purpose of determining when the
statute of limitations starts to run on a breach of warranty claim, we construe
the term “tender” to refer to an offer of goods “under a contract as if in
fulfillment of its conditions even though there is a defect when measured
against the contract obligation.”  See
Tex. Bus. & Com. Code Ann. § 2.503 cmt.
1 (Vernon 1994); Navistar Int’l Corp. v. Hagie Mfg. Co., 662 F. Supp.
1207, 1210 (N.D. Ill. 1987).  

            Tri-Flo
says there is evidence it put and held conforming goods for the buyer’s
disposition on February 15, 1996, and gave reasonable notification necessary
for delivery to be taken.  As a result,
Tri-Flo argues, Conquest’s filing of suit on June 22, 1998, was outside the
two-year statute of limitations provided by the contract.  Conquest says there is no evidence delivery
occurred on February 15, 1996.  

            To
support the February 1996 date, Tri-Flo points to testimony in the record
showing that the requirements of section 2.503, the tender statute, were met on
that date.  It is undisputed that
Rebecca Stokes, president of Coastal Mud, made final payment on February 15,
1996, and that she and Peterson were present at the Tri-Flo yard on that
day.  David Allen, a Tri- Flo employee,
testified as follows:

Q. (The Court):  
. . . [A]re you talking about 2-15-96?

A. (Tri-Flo’s Attorney):  Yes, sir, Your Honor.

Q. (The Court):  
All right. Does that change your answer?

A. (Allen): No, sir, that’s the date I had in mind.

. . . .

Q. (Tri-Flo’s Attorney): [W]hat did Tri-Flo do on the
day that that payment was made?

A.  Well, it’s
my job to actually release the equipment for delivery for the customer, and I
authorized payments received.  It’s
clear, no liens, no holdings, no conditions left, the equipment is considered
delivered.  

. . . .     

A.  I released
the equipment for delivery to the customer. 


Q.  [W]as
Coastal Mud’s representative there, Mrs. Becky Stokes, on at [sic] that day?

A.  Yes, she
was.

Q.  And was Mr.
Grant Peterson there as a representative of Coastal Mud on at that day?

A.  Grant
Peterson was there, yes.  

. . . .

Q.  Between
February the 14th, ’96 and July the 10th of ’96, was there anything
done to the unit by Tri-Flo?  

A.  Not to my
knowledge.  It was moved to the back 40
acres we have back there, out of our assembly work out, moved up the hill.  

. . . .

Q.  When this
unit was constructed and finished and it was paid for on February the 15th,
1996, was it ready to be used in an oil site location?  

A.  It was
field ready, yes.  

 

On cross-examination, Allen testified he did not know
what Peterson’s designated shipment location was, and he agreed with the
statement that the removal of the unit to Integrity’s yard[1]
on July 11, 1996, “could be a shipment.” 
Conquest also interprets Allen’s testimony to reflect a possible June
1998 shipment and delivery date. 
Conquest argues the evidence establishes July 11, 1996, as the earliest
possible delivery or shipment date.  

            Tri-Flo
employee, James Andrews, Jr., testified concerning the unit’s status on
February 15, 1996: 

Q.(Tri-Flo’s attorney): Okay.  In this particular unit, are you aware that
on February the 15th, 1996, that the final payment was made for this
unit?

. . . . 

A. (Andrews): No, sir, I don’t know the final payment
was made, but I do know the unit was moved at that time. 

Q.  What does
that indicate to you when the unit is moved?

A.  Whenever a
unit is moved up the hill for us, we’re done with this assembly, therefore, the
customer has taken possession of it.  

Q.  Is it
Tri-Flo’s custom that if a customer does not have a place or location to move
something, what is the procedure or what is the policy that Tri-Flo has in
place?

. . . .

A.  Oftentimes
Tri-Flo will leave it there on the premises. 
We have a place up the hill we can put the unit. 

Q.  Do you do
that for many or few clients?

A.  Every one I
know of, sir.  

  

            Rebecca Stokes also testified
regarding the sequence of events around

 

February
15, 1996. 

 

Q.  (Tri-Flo’s
Attorney): After you were advised that the equipment was ready to be delivered,
it was at that time that Coastal Mud made its final payment?

A. (Stokes): Yes.

. . . .

Q.  Okay.  But that [the check] did represent final
payment –

A.  Yes.

Q.  - so that
delivery could be completed?

A. Yes.

Q.  Okay.

A.  It was
represented to me that the equipment was ready.

Q.  Okay. And -

A.  And needed
final payment. 

. . . .

Q.  Coastal
Mud, Inc. on the date that it took delivery never rejected the encapsulation
unit at that time? 

A.  Coastal
Mud, Inc. did not take delivery of the equipment.  Coastal Mud, Inc. paid its final payment on the day it was told
to do so by Grant Peterson.

Q.  Okay.  So you’re saying that Grant Peterson took
delivery.

A.  Exactly.  

. . . .

Q.  Okay.  And I believe you’ve testified that Grant
Peterson was inspecting the unit periodically and ongoing as it was being built
and constructed. 

A.  Grant
Peterson lived in Conroe, Texas.  Larry
Dow – the Tri-Flo yard was in Conroe, Texas and I think on a daily basis he was
overseeing that.

 

Stokes also indicated that after she made the February
1996 final payment, the unit was malfunctioning and remained at Tri-Flo’s
yard.  She said Larry Dow, Tri-Flo’s
president, told her he “would take care of those problems, that it was going to
work fine.”  Steve Smith, a Conquest
employee, testified the unit had malfunctioning parts:  the motors kept overheating and burning
up.  He indicated that in June 1996
Conquest was still testing the unit before taking possession from Tri-Flo. 

            The
final payment having been made, Peterson acknowledged he could have removed the
unit on February 15; but he also testified it was not finished, and Tri-Flo
said it would not spend more time on the unit without that payment.  Like Stokes and Smith, Peterson indicated
that parts on the unit were malfunctioning; Peterson said the unit continued to
malfunction and did not pass an electrical inspection even after the equipment
was moved from Tri-Flo’s yard to Integrity’s Conroe facility in July 1996.  Because the unit continued to malfunction
and did not pass an electrical inspection by an independent company, the
equipment was moved back to Tri-Flo’s yard in December 1996 so that Tri-Flo
could “make things right.”  

            Conquest
further argues delivery could not have occurred at Tri-Flo’s facility in
February 1996, because the contract indicates delivery was to be made at a
location other than Tri-Flo’s facility. 
The contract provides FOB warehouse on one line; another line below it
says “Warehouse Conroe, Texas.”  Allen
testified the delivery point meant Tri-Flo’s warehouse in Conroe, but he also
acknowledged Tri-Flo’s warehouse is not in Conroe.  He explained that Tri-Flo always uses Conroe as its warehouse
location, although the warehouse is located between the towns of Conroe and
Willis.  Stokes referred to the Tri-Flo
“yard” as being located in Conroe and described the Tri-Flo facility where she
saw the equipment being manufactured as being in Conroe.   

            Tri-Flo
maintains it put and held conforming goods and gave reasonable notification for
the buyer to take delivery.  And the
record contains some evidence that on February 15, 1996, the unit was paid for,
the buyers were present at the Tri-Flo yard, the unit was “field ready,” and it
was released to the customer and “moved up the hill.” 

            Conquest
says no tender of delivery could have occurred at that time and place, and
cites evidence the unit was not complete and never functioned properly.  Implicit in this argument is the recognition
that due tender of delivery could not occur while the equipment was still in
the process of being manufactured. 
Conquest also argues delivery could not have occurred at the Tri-Flo
yard, because the yard was not located in Conroe -- a reference to the
contract’s FOB warehouse requirement. 
Instead, Conquest maintains the unit was shipped to Integrity’s yard in
July 1996, and that date is the earliest possible delivery date.

            In
determining whether the trial court erred in denying a motion for directed
verdict,  an appellate court considers
all the evidence in the light most favorable to the nonmovant, disregards all
evidence to the contrary, and resolves all reasonable inferences in favor of
the nonmovant.  Fein v. R.P.H., Inc.,
68 S.W.3d 260, 265 (Tex. App.--Houston [14th Dist.] 2002, pet.
denied).  Fact issues must be resolved
by the factfinder, in this case the jury. 
The credibility of the witnesses’ testimony is for the jury to
determine.  Considering Peterson’s
testimony in the light most favorable to Conquest and ignoring all evidence to
the contrary, there is some evidence the equipment was not finished by February
15, 1996, and the payment was made for the purpose of having Tri-Flo complete
the unit.  If the jury believed
Peterson, the jury could infer the manufacturing process was still underway in
February 1996, and could infer that tender of delivery was not made at that
time because the parties knew the unit was not yet complete.  

            On
this record of conflicting testimony, we conclude a fact issue exists as to the
date tender of delivery occurred.  The
trial court correctly held Tri-Flo was not entitled to a directed verdict on
limitations on the breach of warranty claim. 
See generally Holy Cross Church of God in Christ v. Wolf, 44
S.W.3d 562, 568 (Tex. 2001) (accrual is a legal question, but there may be
underlying fact question).  The
conflicting testimony likewise precluded a directed verdict on the breach of
contract claim.  A breach of contract
claim arising from the sale of goods accrues when the contract is breached, e.g.,
when the seller fails to make delivery of the goods.  See Stine v. Stewart, 80 S.W.3d 586, 592 (Tex. 2002); Southwestern
Bell Tel. Co. v. FDP Corp., 811 S.W.2d 572, 576 (Tex. 1991); Tex. Bus. & Com. Code Ann. §§
2.711(a), 2.725 (Vernon 1994).  The
testimony on delivery is conflicting. 
Tri-Flo’s issue one, complaining of the denial of the motion for
directed verdict based on limitations, is overruled.  And for the same reason we overrule Tri-Flo’s issue three, which
complains of lack of timely notice of any defects in the unit within ninety
days of shipment or acceptance of the unit.[2]  The evidence does not conclusively establish
the date of tender, delivery, shipment, or acceptance.  

The Requested Question

            Tri-Flo
argues the trial judge erred in failing to submit a jury question to support
Tri-Flo’s limitations defense. 
Tri-Flo’s requested question concerning tender of delivery was as
follows:  

What date, if any, did Tri-Flo International, Inc.
tender delivery of the encapsulation unit to Coastal Mud, Inc.

 

Your answer shall include the day, month and year.

 

Answer: ______________

 

Instruction: (1) Tender of delivery requires that the seller put
and hold conforming goods at the buyer’s disposition and give the buyer any
notification reasonably necessary to enable [h]im to take delivery.  The manner, time and place for tender are
determined by the agreement and in particular

 

(a)       tender must be at a reasonable hour, and
if it is of goods they  must be kept available
for the period reasonably necessary to enable the buyer to take possession; but

 

 

(b)       unless otherwise agreed the buyer must
furnish facilities reasonably suited to the receipt of the goods.

 

If an issue is properly pleaded and is supported by evidence,
a party is entitled to have controlling fact questions submitted to the
jury.  Triplex Communications, Inc.
v. Riley, 900 S.W.2d 716, 718 (Tex. 1995); Wright Way Constr. Co., Inc.
v. Harlingen Mall Co., 799 S.W.2d 415, 422 (Tex. App.--Corpus Christi 1990,
writ denied).  Tender of delivery is a
disputed issue on which there is conflicting testimony.  The instruction tracks the statutory
requirements of “tender of delivery” in section 2.503(a) of the Texas Business
and Commerce Code, and the jury’s finding in response to the question would
determine a controlling fact issue.  See
generally Union Pac. R.R. Co. v. Williams, 85 S.W.3d 162, 166-69
(Tex. 2002) (“A party is entitled to a jury question, instruction, or
definition if the pleadings and evidence raise an issue.”); Southwestern
Bell Tel. Co. v. John Carlo Texas, Inc., 843 S.W.2d 470, 472 (Tex. 1992). 

            Conquest
argues that Tri-Flo’s tender of delivery issue is not in substantially correct
form to support an affirmative defense of limitations, because the relevant
question, based on the parties’ contract, concerns the date of shipment.  The contract says goods will be of good
quality when “shipped” and that the buyer must give written notice of defects
within 90 days of shipment.  Conquest
relies on the FOB[3] warehouse and “Warehouse Conroe” language in the
contract to suggest that the date of shipment or removal from Tri-Flo’s yard is
the critical date for accrual of the cause of action.  Conquest also seems to argue the question submitted by Tri-Flo
should have included additional language from the tender of delivery statute. 

            The
parties dispute where delivery was to occur. 
The manner of due tender of delivery is subject to the parties’
agreement and the Code provisions governing shipment terms, as well as the
Code’s other provisions.  See Tex. Bus. & Com. Code Ann. §
2.503.  Official Comment 1 to section
2.503 explains that the “[t]he term ‘tender’ is used in this Article in two
different senses.  In one sense it
refers to ‘due tender’ which contemplates an offer coupled with a present
ability to fulfill all the conditions resting on the tendering party and must
be followed by actual performance if the other party shows himself ready to
proceed . . . .  At other times it is
used to refer to an offer of goods or documents under a contract as if in
fulfillment of its conditions even though there is a defect when measured
against the contract obligation.”  Tex. Bus. & com. Code Ann. § 2.503 cmt.
1 (Vernon 1994); see Navistar Int’l Corp., 662 F. Supp. at
1210.  In the context of determining
when the statute of limitations started to run on the breach of warranty claim
-- which is the reason for the requested jury question -- we construe “tender”
as used in the latter sense: an offer of goods under a contract as if in
fulfillment of its conditions even though there is a defect when measured
against the contract obligations.  We
conclude that, for purposes of determining when the statute of limitations on
the breach of warranty claim began to run, the appropriate inquiry was
substantially the one Tri-Flo requested be submitted -- what was the date of
tender of delivery.    

            Conquest
says Tri-Flo did not preserve error, because Tri-Flo did not object to the
omission of the question from the charge. 
Tri-Flo did submit a question on the issue, and the trial court rejected
it.  Under the circumstances of this
case, this was sufficient to preserve error, as the trial court was made aware
of the complaint in a clear and timely manner, and a ruling was obtained.  See State Dep’t of Highways & Pub.
Transp. v. Payne, 838 S.W.2d 235, 240-41 (Tex. 1992) (The test for
preservation of error concerning the jury charge is whether the party made the
trial court aware of the complaint, timely and plainly, and obtained a
ruling.).  The issue is not whether the
trial court should have asked the jury the specific question requested by
Tri-Flo.  The issue is whether Tri-Flo’s
request called the trial court’s attention to Tri-Flo’s complaint, that no
limitations question was submitted to the jury, sufficiently to preserve that
complaint on appeal.  Id. at
239-240.   

            Conquest
also argues that the jury, in answering question three, “must have found”
either July 10, 1996, or June 1998, and not February 15, 1996, to be the date
of shipment; this suggests one of the later dates as the date of the accrual of
the cause of action.  Question three is
derived from the provision in the contract that requires the buyer to give
Tri-Flo written notice of its claims for defects within 90 days from shipment
of the unit.  Based on the jury’s “yes”
answer to question three, Conquest, in effect, asks this Court to accept a June
1996 letter from Stokes to Larry Dow as being the written “notice” that the
jury relied upon in answering the question; based on that interpretation, we
are then asked to further conclude that the jury’s “yes” answer means February
15, 1996, could not have been the date of delivery, because more than 90 days
elapsed between February and June 1996. 

            We
decline to infer findings the jury did not expressly make, which we would have
to do to accept an evidentiary analysis not expressed in the jury’s
answers.  The focus of question three
was on the date of actual shipment, and on the written 90 day notice
requirement; the focus was not on “tender” of delivery in the sense of that
term sufficient to start limitations running. 

            The
trial court erred in refusing to submit a jury question concerning tender of
delivery.  Error in the jury charge is
reversible only if the error probably caused the rendition of an improper
judgment or probably prevented the appellant from properly presenting the case
on appeal.  Tex. R. App. P. 44.1(a). 
To determine harm, a reviewing court must consider the entire record,
including the parties’ pleadings, the evidence, and the charge.  Timberwalk Apartments, Partners, Inc. v.
Cain, 972 S.W.2d 749, 756 (Tex. 1998). 
If the error in the charge relates to a contested issue and the evidence
is sharply conflicting, the error will likely require reversal.  See, e.g., Quantum Chem. Corp. v.
Toennies, 47 S.W.3d 473, 480 (Tex. 2001) (Erroneous instruction on
causation in age discrimination case was reversible error.); John Carlo
Texas, Inc., 843 S.W.2d at 472 (Trial court’s failure to define
justification, a defensive issue, was not harmless error.).  The pleadings and the evidence support the
submission of a jury question on tender of delivery.  The date bears directly on Tri-Flo’s limitations defense to the
breach of warranty claim.  We hold the
error requires reversal and a new trial. 


            The
trial court also refused to submit a question on the disputed issue of
acceptance.  We need not address that
claimed error in detail, as we have concluded the case must be retried.  But the approach is the same.  Controlling fact questions supported by the
pleadings and the evidence should be submitted to the jury for
determination.  

            Before
remanding the case for a new trial, we will address Conquest’s claims on which
the trial court denied relief as a matter of law.  

 

 

 

Conquest’s Issues

Breach of Contract

            The
jury found in favor of Conquest on its breach of contract claim and its breach
of warranty claim.  Besides attorney’s
fees, judgment was rendered in Conquest’s favor only on the breach of express
warranty claim.  Conquest contends the
trial court erred in entering a judgment “that did not include liability on the
Defendant for breach of contract.”

            Tri-Flo
responds there was no privity of contract between Tri-Flo and Conquest.  But Conquest relies on Coastal’s assignment
of Coastal’s “litigious rights” to Conquest. 
That document effectively assigned Coastal’s cause of action for breach
of contract to Conquest, and Conquest is asserting Coastal’s claims under the
contract.  See Act of May 25,
1967, 60th Leg., R.S., ch. 785, § 1, sec. 2.210, 1967 Tex. Gen. Laws
2343, 2365-66 (amended 1999) (current version at Tex. Bus. & Com. Code Ann. § 2.210 (Vernon Sup.
2004)).  Tri-Flo’s lack of privity
argument does not defeat that claim.  

            Tri-Flo
also argues, among other things, that Conquest has no cause of action for
breach of contract because the evidence conclusively established Tri-Flo
delivered the unit and Coastal accepted it without rejection.  But, as we have detailed, the evidence is
conflicting on delivery and acceptance, and on the timeliness of notice.  Given the record we are presented, and the
necessity of a remand for a new trial, we leave the issue of whether Conquest
has a breach of contract claim for review first by the trial court based on the
evidence presented at the new trial.     


The Summary Judgment

            Conquest
also asserted claims based on DTPA violations, negligence, and negligent
misrepresentation -- causes of action which the trial court disposed of by
summary judgment.[4]  Tri-Flo
attached the contract and some deposition excerpts to its motion for summary
judgment, but the motion principally asked for judgment on the pleadings.  If summary judgment is granted on the
pleadings, an appellate court reviews the pleadings, takes all allegations and
inferences in the pleadings as true, and views them in a light most favorable
to the pleader.  Natividad v.
Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994).  The reviewing court will affirm the summary judgment on the
pleadings only if the nonmovant’s pleadings are legally insufficient.  Id. 

            Conquest
says it should have been given an opportunity to replead before the summary
judgment was granted.  See
Friesenhahn v. Ryan, 960 S.W.2d 656, 659 (Tex. 1998).  But Conquest did replead.  Tri-Flo filed its summary judgment motion on
August 3, 2000.  Conquest filed a third
amended petition on September 20, 2000, before the trial court granted
Tri-Flo’s motion for summary judgment on the DTPA claims on March 29, 2001. 

DTPA

            Tri-Flo’s
motion asserts that Conquest’s DTPA “laundry list” allegations are nothing more
than breach of contract claims. 
Conquest’s third amended petition asserts five violations under Tex. Bus. & Com. Code Ann. §
17.46(b)(2), (5), (7), (9), (24) (Vernon Supp. 2004).[5]  The gist of Conquest’s allegations
concerning subsections (2), (5), and (7) is that Tri-Flo represented the unit
would have certain characteristics, benefits, and uses and the unit would be a
“particular standard, quality or grade,” of “good quality,” and “free of
defects in material and workmanship.” 
In Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 13-14 (Tex.
1996), the Supreme Court considered the relationship of contract law and the
DTPA and concluded that an allegation of mere breach of contract, without more,
does not allege a violation of the DTPA. 
The defendant’s alleged representations in Crawford were simply
representations that the defendant would fulfill its duty under the
contract.  Id. at 14.  The mere failure to later perform a contract
does not constitute misrepresentation within the meaning of the DTPA.  Id. at 14-15.  Tri-Flo’s alleged failure to fulfill the
promise to build an encapsulation unit of good quality and free from defects was,
in effect, a pleading that Tri-Flo did not comply with the contract terms.  The trial court properly granted summary
judgment on Conquest’s claim of DTPA violations under section 17.46(b)(2), (5),
and (7).

            Conquest
included in its DTPA “laundry list” two claims that exist independently of
Tri-Flo’s duties under the contract. 
Specifically, Conquest pleaded that Tri-Flo advertised goods or services
with the intent not to sell them as advertised.  Conquest further pleaded that Tri-Flo violated the DTPA by
failing “to disclose information concerning goods or services which was known
at the time of the transaction if such failure to disclose such information was
intended to induce the consumer into a transaction into which the consumer
would not have entered had the information been disclosed[.]”  A duty to not act illegally to procure a
contract is separate and independent from the duties established by the
contract itself.  See, e.g., Formosa
Plastics Corp. USA v. Presidio Eng’rs and Contractors, Inc., 960 S.W.2d 41,
45-46 (Tex. 1998).  Conquest’s
allegations concerning violations under section 17.46(b)(9) and (24) involve
deceptive conduct that Conquest says was intended to induce it to enter into a
transaction it otherwise would not have entered.  Conquest’s DTPA claims under subsections (9) and (24) do not
allege merely breach of contract, and the trial court erred in granting summary
judgment on those pleadings.   

            Tri-Flo
also moved for summary judgment on the ground that Conquest’s DTPA claims based
on breach of warranty are limited by the express terms stated in the
contract.  The contract provides that
Coastal was to make any claims regarding defects within 90 days of
shipment.  Tri-Flo says Conquest did not
comply with the 90-day contractual requirement.  But as we have detailed, nothing in this record conclusively
establishes the shipment date of the unit. 
Summary judgment was not proper on the 90-day notice requirement.[6]   

Negligence and Negligent
Misrepresentation

            Conquest
also contends the trial judge erred in granting summary judgment against
Conquest on its negligence and negligent misrepresentation causes of
action.  Tri-Flo’s motion for summary
judgment ground says Conquest’s allegations, even if taken as true, can only be
characterized as contract claims. 
Conquest pleaded that Tri-Flo “negligently [sold] a substandard product
which did not meet or exceed even minimal industry standards, codes, and
quality control standards” and failed “to provide Plaintiffs and others with a
viable product which would meet or exceed the representations made by the
Defendants[.]” Conquest’s negligence and negligent misrepresentation claims are
in substance contract claims relabeled as torts.  See Formosa Plastics Corp. USA, 960 S.W.2d at 47; Yzaguirre
v. KCS Resources, Inc., 47 S.W.3d 532, 543 (Tex. App.--Dallas 2000), aff’d,
53 S.W.3d 368 (Tex. 2001); but see Kajima Int’l, Inc. v. Formosa Plastics
Corp., USA, 15 S.W.3d 289, 292-294 (Tex. App.--Corpus Christi 2000, pet. denied).  The trial court was correct in granting
summary judgment on those claims.   

            On
appeal and in its responses to Tri-Flo’s summary judgment motion, Conquest also
argues that its pleadings include a claim for fraudulent inducement.  Neither of Tri-Flo’s motions for partial
summary judgment, however, encompasses that cause of action.  The judgment says the trial court granted
Tri-Flo’s motion for summary judgment on all claims except breach of warranty,
breach of contract, and attorney’s fees. 
It appears summary judgment was granted on a claim not addressed in
Tri-Flo’s motions.  Summary judgment may
be granted only on grounds raised by the movant in its motion.  McConnell v. Southside Indep. Sch. Dist.,
858 S.W.2d 337, 339-41 (Tex. 1993). 
We conclude the trial court erred in granting summary judgment on
Conquest’s fraudulent inducement claim. 


            We
need not address the parties’ remaining complaints on appeal, as we have
determined a new trial is required.  We
affirm the trial court’s rulings on the negligence and negligent
misrepresentation claims, and on the section 17.46(b)(2),(5) and (7) DTPA
claims.  We reverse the judgment in all
other respects and remand for a new trial.

            AFFIRMED
IN PART; REVERSED IN PART AND REMANDED.

                                                                                    _________________________________

                                                                                        
DAVID B. GAULTNEY

                                                                                                       
Justice

 

Submitted
on March 11, 2004

Opinion
Delivered May 6, 2004 

 

Before McKeithen, C.J.,
Burgess and Gaultney , JJ.  











            [1]Integrity
was an oil mud company which had a facility in Conroe.  





            [2]The
contract speaks of the notice requirement as being “within 90 days from
shipment.”  Tri-Flo’s brief variously
speaks of notice “within 90 days of shipment” and “90 days of acceptance.”    





            [3]FOB
is a delivery term meaning “free on board”; when linked with other identifying
information -- the place of shipment or the place of destination, and possibly
also vessel, car,  or other vehicle --
the term identifies duties related to the shipment or delivery of the
goods.  See Tex. Bus. & Com. Code Ann. §§
2.319, 2.503, 2.725 (Vernon 1994).   

 





            [4]The
record does not contain a signed order granting Tri-Flo’s motion for summary
judgment on the DTPA, negligence, and negligent misrepresentation claims.  We know summary judgment was granted on
those claims prior to final judgment, because the final judgment and the
parties say so.  





            [5]Conquest’s
pleadings cite to section 17.46(b)(23). 
We note that the statute has been amended, and subsection (23) is now
subsection (24).  





            [6]See
Southwestern Bell Tel. Co. v. FDP Corp., 811 S.W.2d 572, 576-77 (Tex. 1991); Lochinvar Corp. v. Meyers, 930
S.W.2d 182, 189-190 (Tex. App.--Dallas 1996, no writ)(“Ordinarily, notice [that
a breach of warranty has occurred] is a question of fact to be determined by
the trier of fact.”).